Dunn *v.* Eaton.

\* Dunn *v.* Eaton.

(*Jackson.* September 11, 1893.)

1. EJECTMENT. *Evidence.*

The self-disserving admissions of a predecessor in title are, as a rule, admissible against those who follow and claim under him, when such admissions are made at the time such predecessor was in possession. (*Post, p. 750.*)

2. SAME. *Same.*

Declarations of this character are to be received, not only in disparagement and diminution of the property which the declarant enjoyed, but as evidence of any fact which is not foreign to the statement against interest, and which forms substantially a part of it. (*Post, p. 750.*)

3. SAME. *Same.*

The rule admits, as against succeeding holders of a title, maps, recitals in deeds, monuments, and boundaries, of which an owner, during his ownership, was author. (*Post, p. 750.*)

4. SAME. *Same.*

Deeds, although not links in deraignment of title from original owner, are admissible in evidence, when connected with possession of present owners, and of those under whom they claim, for the purpose of showing the boundaries of such possession, as well as the nature, extent, and description of their claim. Such conveyances are also admissible in aid of the presumption of a deed from one of the original grantors, arising from long possession of defendants and of those under whom they claim. (*Post, p. 751.*)

5. SAME. *Presumption of deed.*

When possession and use of land are long continued, they create a presumption of lawful origin—that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It is sufficient, if the evidence leads to the conclusion that the conveyance might have been exe-

\* Syllabus prepared by Judge McAlister.—REPORTER.

Dunn *v.* Eaton.

cuted, and that its existence would be a solution of the difficulties arising from its non-execution. (*Post, pp. 753, 754.*)

Cases cited and approved: Williams *v.* Donnell, 2 Head, 695; 120 U. S., 534.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

M. R. PATTERSON, and RANDOLPH & SONS for Dunn.

L. B. EATON, F. P. POSTON, GANTT & PATTERSON, GEO. WEIRHARDT, W. B. GLISSON, METCALF & WALKER, and SMITH & COLLIER for Eaton.

McALISTER, J. This is an ejectment bill to recover an undivided one-third interest in six acres of land lying along the south side of Vance Street, in the city of Memphis. The land in controversy is part of a tract of two hundred and forty-three acres originally owned by Dr. Dudley Dunn. By a codicil to his will, dated January 3, 1847, Dr. Dunn devised all the residue of his estate, embracing this two hundred and forty-three acre tract, to his three children, Camilla F. DuBose, William D. Dunn, and David L. Dunn, to have and to hold the same during their natural lives, and from and after their deaths he devised the share of each to

Dunn v. Eaton.

such child or children as each may have living at his or her death.

Dr. Dunn, the testator, died in February 1848, and on March 18, 1848, his devisees filed their petition in the Commercial and Criminal Court of Memphis for a partition of this land as life tenants under the will. The Commissioners appointed by the Court made a report of a partition dated April 26, 1848, which was confirmed by the Court, and title vested and divested. The property in controversy was not embraced in the report of the Commissioners, and was entirely excluded from the partition.

The complainants in the present suit are the children of William Dudley Dunn, who, as already stated, was a son of Dr. Dunn, and these children claim an undivided one-third interest in this six acres as remainder-men devisees under the will.

William Dudley Dunn died in May, 1881, and this bill was filed on March 14, 1888, within seven years after his death. The contention of complainants is that their father had a life estate in this land, and that, upon his death, in May, 1881, their rights accrued as remainder-men, under the will of Dr. Dunn, and that they then answered the description in his will of children of William Dudley Dunn living at the time of his death. Defendants are the persons in possession of different parts of the six acres, and those claiming title to different portions of it. Defendants claim under connected conveyances from Judge William T.

Brown, who conveyed to Walker in 1855, and describes the land as lot number five of a town laid off by Dr. Dunn.

Defendants have all answered, but none of them set up any conveyance from Dr. Dunn, nor any contract in writing purporting to have been executed by him, and passing title to this land. They rest their defense on the presumption of a conveyance from Dr. Dunn, which they claim arises as a matter of law or fact from the long lapse of time since Dunn's death, the various conveyances which have since been made of the land, the possession of those under whom they claim, and their own possession under said conveyances, together with other facts and circumstances set forth in the record.

The Chancellor held that Dr. Dunn, the ancestor of complainants, although at one time owner of this lot, was not seized and possessed of the same at the date of his death. He held that the entire proof, taken together, justifies the conclusion that Dr. Dunn had sold this lot to Judge William T. Brown, and that said Brown was in the actual possession thereof, under visible inclosures, for several years prior to the death of said Dunn, under circumstances showing that said Dunn knew of the possession and claim of ownership on the part of said Brown; that, while no deed appears of record or is exhibited in the proof of Dunn to Brown, yet the facts and circumstances are of a character to authorize the conclusion that a deed

might have been made by said Dunn to said Brown, and justifies the presumption of its exist-ence.

The Chancellor further held that this presumption accords with equity and justice, and is in harmony with the conduct of said Dunn and his descendants, by whom no claim to said lot was made from about the year 1845 until the year 1888, when this bill was filed—a period of over forty-three years—during all which time said Brown and those claiming under him were openly exercising acts of ownership over said lot, making improvements thereon, paying taxes, enjoying the use, and appropriating the rents and profits thereof. The Chancellor adjudged, therefore, that complainants had no interest in said land, and dismissed their bill. Complainants appealed, and have assigned errors. The first error assigned is that the Court erred in admitting in evidence the record of the partition suit from the Commercial and Criminal Court of Memphis, purporting to show a partition between the children of Dr. Dudley Dunn of certain portions of the original tract of two hundred and forty-three acres. The ground of the exception is that the complainants in this suit were not parties to the partition suit, and that what transpired or was adjudicated in that suit, is not evidence against those complainants. It is also insisted that the property involved in the present suit was not embraced in the partition suit. The plan attached to the report of the Commissioners

in the partition suit was particularly objected to by complainants, on the ground that it did not purport to be a conveyance of the property, and could not legally affect the title. The question thus presented for the consideration and determination of the Court is, whether the record of the partition suit was admissible in evidence.

The cardinal inquiry in this suit is whether lot No. 5, which is the property in controversy, was a part of Dr. Dudley Dunn's estate at the date of his death. The object of introducing the record of the partition proceedings was to show that the life tenants under the will of Dr. Dunn did not claim, at the time of the partition, that this lot No. 5, in the Wherry plan, was a part of Dr. Dunn's estate, and that it was intentionally excluded from said partition. It appears from the record that the basis of this partition was a plan made by one John Wherry, a surveyor, some years prior to the partition and during the life-time of Dr. Dunn. The said John Wherry was one of the Commissioners who made this partition, and the allotments were made in accordance with the numbers laid down on the Wherry plan. The Commissioners made no change in the streets and alleys laid out on this plan, but adopted them as they found them on this plan. The evidence in the record indicates very clearly that this plan was made by John Wherry for Dr. Dunn. In May, 1845, Dr. Dunn sold and conveyed lot 18 of said division to James H. Stewart, and in the deed he

refers to the plan as a survey recently made by John Wherry. In September, 1845, Dr. Dunn sold another lot on said plan to one Price, giving him bond for title, and referring, in express terms, to this plan. It further appears that in January, 1848, Dr. Dunn sold another lot on said plan by the lot number and description given on said plan, *the deed expressly reciting that this plan was made for him.*

Again, in the second codicil to his will, Dr. Dunn refers to this plan, and specifically devises three of the lots on this plan by lot numbers. This plan is exhibited in evidence, and is shown to have been found among the old files of the partition proceedings, in the right place and in proper official custody. As already stated, the Commissioners made this plan the basis of the partition, and they refer to it as the large plan of the division. Now, the most important fact connected with this plan is that it recites on its face that lot No. 5, which is the subject of this controversy, was sold to Judge W. T. Brown. There were three other lots in this plan marked sold, to wit: Lot 18, to Stewart; lot 34, to Price; and lot 33, to Dickinson. All of these four lots were excluded by the Commissioners in making their allotments.

The complainants objected, as already stated, to the introduction in evidence of the record of the partition among the life tenants; also to the plan, which is shown to have been made by John

Wherry, surveyor for Dr. Dunn; also to the re-
citals in the deeds from Dr. Dunn to various pur-
chasers of lots in this plan. We are of opinion
that this evidence was properly admitted by the
Court, as it ˉall tended to show that neither Dr.
Dunn, at the date of his death, nor the life ten-
ant devisees under his will, when they came to
partition his estate, claimed any right, title, or in-
terest in lot No. 5, which is the subject-matter of
this controversy. Says Mr. Wharton, in his work
on Evidence, Vol. II., Sec. 1156, viz.: "The self-
disserving admissions of a predecessor in title are,
as a rule, admissible against those who follow and
claim under him, when such admissions are made
at the time such predecessor was in possession.
Declarations of this character are to be received
not only in disparagement and diminution of the
property which the declarant enjoyed, but as evi-
dence of any fact which is not foreign to the
statement against interest, and which forms sub-
stantially a part of it. Thus the declarations of
the ancestor that he held the land as the tenant
of a third person, are admissible in evidence to
show the seizin of that person in an action brought
by him against the heir for the land, and declara-
tions of a former owner as to boundaries are, in
like manner, admissible. * * * Thus the rule
admits, as against succeeding holders of a title,
maps, recitals in deeds, monuments and boundaries
of which an owner, during his ownership, was
author." See also Vol. I., Secs. 194, 668, 670.

Complainants also objected to the several deeds offered in evidence on the part of defendants, under which they claim title, because those deeds were not connected with Dr. Dudley Dunn, in whom the title to this lot was originally vested, but depend on conveyances made since Dr. Dunn's death. The objection is that the deeds do not show a proper deraignment of title. It is clear, however, that these deeds were admissible in evidence on behalf of defendants, when connected with their respective possessions and the possessions of those under whom they claim, for the purpose of showing the boundaries of such possessions, as well as the nature, extent, and description of their claim. These deeds were also admissible in aid of the presumption of a deed from Dr. Dunn to Judge Brown, arising from long possession of this land by the defendants and those under whom they claim.

Complainants also assign as error the action of the Chancellor in admitting as evidence the deposition of Richard Norris. This witness is an old citizen of Memphis, and testified that Judge Brown was in the actual possession of this lot as early as 1845, which was during the life of Dr. Dunn. He also testified that Brown built a double cabin and sunk a well on this lot in 1845, and that his servants occupied the cabin and used the well. Brown and Norris (the latter testified) built a plank fence on the line between their lots, displacing a rail fence that Brown had previously built on the line of his lot. The evidence of Richard Norris

was objected to by complainants, on the ground that it is an attempt to prove title to the property in controversy by hearsay and in parol, and upon the further ground that the witness did not state his knowledge or recollection of existing facts, but only what he thought or supposed or concluded must have been facts.

We are of opinion, upon an examination of the deposition, that the objections are not well taken, and the evidence is clearly competent, as showing the possession of Judge Brown by visible inclosures during the life of Dr. Dunn, and the former's acts of dominion and ownership over this property.

It is also insisted on behalf of complainants, that their title as remainder-men vested on the death of their father, William Dudley Dunn, which occurred in May, 1881, and that, as their cause of action accrued at that time, no statute of limitations began to run against them until that date, and that they are not prejudiced or in any way affected by any thing done or omitted during the life of their father, the life tenant. It is true the statutes of limitations do not begin to run against remainder-men until the termination of the life estate. But, as stated by counsel for defendants in his brief, the object of the evidence introduced by defendants is not to set the statutes of limitations or the presumption of a deed in operation against remainder-men during the existence of the particular estate, but to show that there is neither particular estate nor remainder; that in fact the

will of Dr. Dunn did not embrace this property, because it was not the testator's at his death. If, then, Judge Brown was in possession of this property by visible inclosures in the life-time of Dr. Dunn, and his possession was adverse, as shown by Dr. Dunn's plan, which declares that this lot had been sold to Judge Brown, then there was no particular estate which would defeat the presumption of a deed arising from this long, continuous, and adverse possession of Brown and those claiming under him.

As stated by Justice Fields in *Fletcher* v. *Fuller*, 120 U. S., 534, the owners of property, especially if it be valuable and available, do not often allow it to remain in the quiet and unquestioned enjoyment of others.   Such a course is not in accordance with the ordinary conduct of men.   When, therefore, possession and use are long continued, they create a presumption of lawful origin—that is, that they are founded upon such instruments and proceedings as, in law, would pass the right to the possession and use of the property.   *   *   * The general statement of the doctrine, as we have seen from the authorities cited, is that the presumption of a grant is indulged merely to quiet a long possession, which might otherwise be disturbed by reason of the inability of the possessor to produce the muniments of title, which were actually given at the time of the acquisition of the property by him or those under whom he claims, but have been lost, or which he or they were

48—8 P

entitled to have at that time, but had neglected to obtain, and of which the witnesses have passed away, or their recollection of the transaction has become dimmed and imperfect.    *    *    *    It is not necessary, therefore, in the cases mentioned, for the jury, in order to presume a conveyance, to believe that a conveyance was in point of fact executed. It is sufficient if the evidence leads to the conclusion that the conveyance *might* have been executed, and that its existence would be a solution of the difficulties arising from its non-execution." To the same effect is *Williams* v. *Donnell*, 2 Head, 695.

We are of opinion that the presumption of a deed from Dr. Dunn to Judge Brown is well warranted, both as a matter of law and fact upon the evidence presented in this record.

The decree of the Chancellor is affirmed.