## HARTON *v.* LYONS.

### (*Jackson.*   July 17, 1896.)

1. DEPOSITIONS. *Exception to, untenable, when.*

Exception to depositions, as having been taken before issue joined, is untenable when made by minor defendants to original and cross bills involving the same questions of fact, where their guardian *ad litem*, who had made formal answer to the original bill several months before, but had not answered cross bill, represented them in the taking of the depositions and fully cross-examined the witnesses. (*Post, pp. 186, 187.*)

2. EVIDENCE. *Declarations of grantor in possession part of res gestæ.*

A grantor's delaration that his deed was a "sham" and fraudulent, made after its execution, but while he remained in possession, control, and management of the premises conveyed, is competent as part of the *res gestæ* of his possession and to explain its character in a suit involving the validity of such deed. (*Post, p. 187.*)

Cases cited and approved: Brooks *v.* Lowenstein, 95 Tenn., 267; 95 Am. Dec., 70.

3. SAME. *Declarations of grantor in presence of holder of title.*

In a suit to set aside as fraudulent a series of conveyances, whereby the husband's property was vested in his wife, it is competent, as tending to show her knowledge of the fraud, to prove that the husband stated in her presence that his deed, the first of the series, was a "sham" to defraud his creditors, and that she tacitly admitted the truth of the statement. (*Post, pp. 187, 188.*)

Case cited and approved: Daugherty *v.* Marcum, 3 Head, 323.

4. SAME. *Declaration of holder of title.*

In a suit to set aside as fraudulent a series of conveyances, whereby the husband's property was vested in his wife, it is competent to prove the statements, made while he held the title, by any of the parties through whom it passed, tending

to show that the transaction was a fraudulent scheme. (*Post,* *pp. 188.*)

5. FRAUDULENT CONVEYANCE. *Subsequent purchaser cannot recover.*

A purchaser of land, though having no actual notice of a prior registered conveyance by his grantor, made without consideration and with intent to defraud existing creditors, is not protected as an innocent purchaser, and cannot, even as against the volunteer, obtain affirmative relief setting such conveyance aside. (*Post, pp. 189–191.*)

Code construed: § 3143 (S.); § 2424 (M. & V.); § 1759 (T. & S.).

Case cited and approved: Laird v. Scott, 5 Heis., 346; 5 Pet., 256.

6. SAME. *Subsequent purchaser can defend against.*

The heirs of a fraudulent grantee of land, who never took possession, cannot recover the land from one who subsequently, and without actual notice of the first deed, purchased the land for full value, without fraud from the fraudulent grantor, the latter being in possession, exercising ownership and control at the time of the purchase, although the prior deed had been registered, and was fraudulent only as to creditors. (*Post, pp. 191–196.*)

Cases cited and approved: Marr v. Gilliam, 1 Cold., 507; Parks v. McKamy, 3 Head, 297; Nichols v. Cabe, 3 Head, 91.

7. MAXIM. *Clean hands.*

He who comes into a Court of Equity asking its aid, must come with clean hands. (*Post, pp. 189–191.*)

---

FROM MADISON.

---

Appeal from the Chancery Court of Madison County. A. G. HAWKINS, Ch.

JNO. L. BROWN and E. L. BULLOCK for Harton.

CARUTHERS & MALLORY and HAYNES & HAYS for Lyons.

JOHN T. ALLEN, Sp. J.  This bill was filed in the Chancery Court of Madison County by Elizabeth L. Harton against David Lyons and others to have the Court to set aside and have declared void a deed to 140¾ acres of land, executed by John R. Hicks and wife, Fannie K. Hicks, to defendant, David Lyons, dated September 17, 1888, and to have complainant's interest therein fully determined, and for an account as to rent of said land against said Lyons.

Complainant, Elizabeth L. Harton, and all the defendants except David Lyons, are brothers and sisters and nieces and nephews of Fannie T. Hicks, deceased, former wife of John R. Hicks, and they are alleged to be her lawful heirs, she having died intestate, without issue, on June 19, 1887.  And it is alleged that the said Fannie T. Hicks was the owner of said land at her death, under a deed from James Hicks to said Fannie T. Hicks, dated January 8, 1880, which conveyed said land to her as her separate estate.  And that John R. Hicks married again, his second wife's name being Fannie K. Hicks, and on September 17, 1888, said John R. Hicks and wife, Fannie K. Hicks, executed a deed to defendant, David Lyons, purporting to convey to said Lyons the fee in said land and containing the usual covenants of seizin and warranty, the consideration being $5,000 paid by said Lyons to John R. Hicks.

John R. Hicks was in possession of said land at the time he made said deed to Lyons, and had lived

on it and controlled possession of the same continuously for twenty years or longer prior to said conveyance to Lyons. And Lyons went into the possession of said land, under said deed, in November, 1888, and he has been in possession of said land ever since, being in possession when said bill was filed and continuously until now. And defendant, Lyons, by his answer admits that on January 8, 1880, James Hicks, by his deed of that date, purported to convey all the right, title, and interest which he had in and to the tract of land to his daughter-in-law, Fannie T. Hicks, but without any covenants of seizin and warranty, the only consideration being love and affection. This defendant also avers that John R. Hicks had the title to said land, and was in the sole, exclusive, and adverse possession of the same, claiming the same as his own, when he sold and conveyed said land to defendant, Lyons; and that defendant, Lyons, was put into possession of said land by said John R. Hicks and wife, who were seized, or appeared to be seized, and possessed of said land. Defendant, Lyons, also averred that he was an entire stranger in Madison County, having come down from his home in the North to buy a home in the South. Said John R. Hicks being in possession and control of said land, claiming to own it, and he purchased said land of Hicks, and paid him $5,000 for the same, believing he was getting a good title to said land, and he never at any time had any notice or information that complainant had

any interest or claims in said land ; that he acted in good faith, with no intention of committing a fraud on complainant and his co-defendants, and said he was an 'innocent purchaser of said land for value without notice of the alleged claim or of any defect in the title ; that since his said purchase he· has paid the taxes on said land, and put valuable permanent improvements on the same. Defendant, Lyons, also filed a cross bill in said case, making complainant and his co-defendants in the original bill defendants to said cross bill, in which he charged that the title of the said land in the said Fannie T. Hicks originated in and was the result of a fraudulent conveyance on the part of John R. Hicks, in which the said Fannie T. Hicks participated; and that the heirs of said Fannie T. Hicks are privies in estate, and that a Court of Equity will not aid them to effectuate their fraud, but will repel them. And he shows the conveyances of said land to have been as follows, to-wit :

From Wyatt A. Taylor to John R. Hicks, deed dated and registered September 10, 1866, to 150 acres 124 poles,· for the consideration of $3,400.

From John R. Hicks to James B. Pearcy, deed dated and registered July 24, 1879, 140¾ acres, for recited consideration of $3,000.

From James B. Pearcy to James Hicks, deed dated and registered January 8, 1880, 140¾ acres, consideration $3,000 ; and deed from James Hicks to Fannie T. Hicks, dated and registered January 8,

1880, 140¾ acres, consideration being love and affection. All of said deeds containing covenant of seizin and warranty, except the last mentioned deed from James Hicks to Fannie T. Hicks.

And that said Pearcy was a brother-in-law of John R. Hicks, and that said James Hicks was his father; that no part of the recited consideration was paid either by Pearcy or James Hicks;' that John R. Hicks was bound as security, and made and secured these conveyances in order to transfer said land to his wife, Fannie T. Hicks, and avoid the payment of security debts, and the same was a fraudulent scheme and device on the part of said John R. Hicks, James B. Pearcy, James Hicks, and Fannie T. Hicks for the purpose of hindering and delaying the creditors of said John R. Hicks in the collection of their debts, and especially one Potts, administrator, who had a judgment for $642.56, which was sued on the day the conveyance was made by John R. ·Hicks to Pearcy; that said Potts, administrator, filed his bill on June 29, 1886, against John R. Hicks and Fannie T. Hicks, attacking said conveyance for fraud, seeking to have the same set aside and the land subjected to the judgment against John R. Hicks, which was settled without being prosecuted to a hearing on the merits. Also said Lyons alleged that he was an innocent purchaser and sought relief on that account.

There was a demurrer to so much of said cross bill as sought relief on the ground of innocent purchaser,

which was overruled, and the defendants to the cross
bill were allowed to rely on said cause of demurrer
in their answer.  Issue was joined on the cross bill,
the minor defendants answering by their guardian *ad
litem*.    The depositions of four witnesses were taken,
who proved substantially that John R. Hicks made
different statements after he made the deed to Pearcy,
while he was in possession of said land and while
his wife, Fannie T., was living, to the effect that
the conveyance from him to Pearcy, his brother-in-
law, was a sham to keep from paying a security
debt for one Brown to Potts, administrator of Rice
estate.    Some of these statements were made to a
relative, after the conveyance was made, and on one
occasion his wife, Fannie T., was present, and she
told him to hush talking about it, that they were
not going to leave the place.

They also establish the fact that John R. Hicks
continued to reside there on the place and control it
as his own; that no change was made in the pos-
session and management of the place.    Also, that
Pearcy made a similar statement in regard to his
deed; that John R. Hicks held himself out as the
owner all the time before and after his wife's death;
that James Hicks made the deed to Fannie Hicks
the same day Pearcy deeded the land to him.    James
Hicks is dead, and nothing was found among his
papers indicating that he had paid Pearcy for said
land, or that he had such a transaction.    No proof
was offered to disprove these statements made by

Harton *v.* Lyons.

John R. Hicks, but defendants to cross bill, especially the minor defendants, filed exceptions to the proof of John R. Hicks' statements and the statements of Pearcy on the grounds of incompetency, and also excepted because the cause was not at issue when the proof was taken.

We find that the cause was at issue; but, if the guardian *ad litem* had not then answered the cross bill, they were represented by him in examination of said witnesses, and the cross-examination by him of each witness was full and sufficient to test the truth of this evidence. Besides, the answer filed by the guardian *ad litem* was a mere formal answer, setting up no special defense, and simply trusted their rights to the protection of the Court. This answer was filed several months before the taking of said depositions.

It is manifest no advantage was taken of the minors at any time in taking said depositions, and no reason exists for sustaining this exception. The Court is of the opinion that the proof of the statements made by John R. Hicks, immediately after he made said deed to Pearcy, and at different times after that, while he was in possession, controlling and managing said land, were entirely competent as part of the *res gestæ* of the possession, as explanatory of his possessions. *Brooks, Neely & Co.* v. *Lowenstein*, 11 Pick., 267, 268; *People* v. *Vernon*, 95 Am. Dec., 70, note, and authorities cited.

The conversation between the witness, R. O. Hicks,

and John R. Hicks, in the presence of Fannie T.
Hicks, in reference to the nature and character of
the deed to Pearcy, when John R. Hicks explained
that said deed was a sham to avoid paying a secu-
rity debt, which was not denied by her; and the
declaration of Fannie T. Hicks at that time, when
she said, "Hush; there is no use talking about
it, we are never going to leave here," was at
least a tacit admission by her of the truth· of the
facts asserted in her presence by John R. Hicks,
and were competent to show that she understood
that the transaction was a sham, as explained by
her husband.   *Dougherty* v. *Marcum*, 3 Head, 322,
323.

The statement of James Pearcy, as proven by his
son, Dan. J. Pearcy, made while he held the title
of said land, that John R. Hicks had conveyed the
land to him to keep from paying a security debt,
and that he was to convey it back whenever he
called on him, corroborates the statements made by
John R. Hicks, and is competent, as showing the
intention of the maker and holder of the deed.
This witness proves, also, that his father conveyed
the land to James Hicks, pursuant to this under-
standing with John R. Hicks.

There are other exceptions to the testimony of
these witnesses and the ruling of the Chancellor
which are not material to mention, as it is obvious
enough competent proof was introduced to show said
deeds—from John R. Hicks to Pearcy, from Pearcy

to James Hicks, and from James Hicks to Fannie T. Hicks—were a fraudulent scheme to defeat the creditors of John R. Hicks, by which he conveyed to his wife, Fannie T. Hicks, in this roundabout way, the title of his land.

It is manifest David Lyons purchased said land in good faith from John R. Hicks and wife, Fannie K., and paid a full price for the same, and is in possession of the same under his deed from John R. Hicks and wife. It is also manifest that said Lyons' title is defective in this, that the title of said land was not in John R. Hicks or in Fannie K., the second wife of John R. Hicks, at the time the deed was made by them to Lyons, and his title could not prevail against the complainant in the original bill and defendants in the cross bill, provided Fannie T. Hicks, deceased, acquired a valid title, either by a voluntary conveyance without fraud, or by purchase for valuable consideration, which descended to her heirs at her death.

The Court is satisfied that the deed under which Fannie T. Hicks held said land, was nothing more than a voluntary deed of conveyance from her husband, John R. Hicks, made for the purpose of hindering, delaying, and defeating the collection of certain indebtedness of the husband, and the same was therefore fraudulent, and voidable at the instance of such creditors. This being true, the next question is, is defendant, Lyons, an innocent purchaser, or can the said Lyons, who is in possession of said

land, and whose title is attacked, show, under his answer and cross bill, that the title of Fannie T. Hicks was procured through fraud, and thereby defeat complainants' suit against him? 27 Elizabeth C. 4, provided that every voluntary conveyance of land should be meant and intended by the parties to be fraudulent and void against purchasers of said land.

Chancellor Kent says: "It is settled in England that a voluntary conveyance, though for a meritorious purpose, will be deemed to have been made with fraudulent views, and set aside in favor of subsequent purchasers for a valuable consideration, even though he had notice of the prior deed." 4 Kent, 463.

In the case of *Cathcart* v. *Robinson*, 5 Peters, 264, Chief Justice Marshall, delivering the opinion of the Court, said: "This being a voluntary conveyance, is, at this day (1831), held by the Courts of England to be absolutely void, under statutes of 27 Elizabeth, against subsequent purchasers, even though he purchased with notice."

It has been held by this Court that the Act of 1801 superseded this English statute and was intended by the Legislature as a substitute for 13th and 27th Elizabeth, the former having reference to fraudulent conveyances of personal property as well as lands, and designed to protect creditors against such conveyances, the latter confined to lands, tenements, etc., and designed to protect subsequent purchasers

for value against such fraudulent conveyances, the provisions of the two English statutes being combined into one in our Act of 1801. M. & V. Code, § 2424.

Our law provides for the registration of voluntary conveyances of lands, and, when registered, they operate as a notice to all subsequent purchasers. After registration of a voluntary deed for land, a subsequent purchaser for value cannot claim to be an innocent purchaser without notice. But if the voluntary conveyance was intended to defraud a subsequent purchaser, the notice of registration will not affect his right to attack the voluntary conveyance for actual fraud. *Laird* v. *Scott*, 5 Heis., 346.

This being a case where the voluntary conveyance was made to hinder and delay creditors, and not to defraud subsequent purchasers, the subsequent purchaser cannot attack said deed and set it aside for fraud, nor can he claim to be an innocent purchaser without notice, the conveyance having been registered prior to said subsequent purchase. Therefore the Chancellor was right in sustaining the demurrer in the answer on final hearing to so much of the cross bill as claimed that defendant, Lyons, was an innocent purchaser.

The next question is whether said Lyons, as a subsequent purchaser for value without fraud on his part, and being in possession of said land, can repel complainant's suit brought against him in a Court of Equity to recover said land by showing that com-

plainant's title was acquired by and through a fraudulent conveyance.

"A complete title to lands cannot exist without possession, and when the owner of the estate loses this, though he has the right of possession and of property, he loses something which the disseizor acquires. The first degree of title is said to be bare possession, or actual occupation of land, without any apparent right or pretense of right to hold and continue such possession, as where one disseizes another, which may, of course, be defeated by the rightful owner; but in the meantime, until some act is done by the rightful owner to divest this possession and assert his title, such actual possession is *prima facie* evidence of a legal title in the possessor, and it may, by length of time and negligence of him who hath the right, by degrees ripen into a perfect and indefeasible title." *Marr* v. *Gilliam*, 1 Cold., 507, 508.

Lyons is in possession of said land, not as a trespasser, but under a deed from John R. Hicks and wife, Fannie K. Hicks, the said Hicks having held possession of said land until he put said Lyons in possession under his deed. Lyons acted in good faith in the purchase of said land, and paid to the vendor a full price for it. John R. Hicks and wife, Fannie K. Hicks, joined in the deed to him. Lyons knew nothing about the death of Fannie T. Hicks, the first wife, nor that John R. Hicks was then living with a second wife, whose first name

was the same as the first wife's. He was a stranger, and knew none of these facts. He very naturally presumed that Hicks and wife, Fannie K., were the rightful owners of said land, and that they could make a good title to the same, inasmuch as they were in possession, claiming to own the land.

Judge Wright, delivering the opinion of the Court in *Parks* v. *McKamy*, 3 Head, 297, 298, said : "No principle of law is better settled than that an action will not lie to enforce a contract made in violation of a statute, or of the common law, or which is immoral in its character or against public policy ; the parties stand in equal guilt, and neither will receive the aid of a Court of justice. In such a case, it is said, the defendant is in the better—that is, in the safer—attitude, he being required to say or do nothing, while his adversary is the actor and has to show the case.

"The defendant, not because of any favor to him, but because he is such, can, upon well-settled principles, allege and show the invalidity of the contract. This does not impair the rule that the parties to a conveyance to defraud creditors are bound by it, since neither can invoke the aid of a Court of justice to undo it."

That was an action where a bond was executed by the defendant, McKamy, to Parks, and there was proof tending to show that the bond was executed as a fraudulent device, to hinder and delay the creditors of Parks in the collection of their

debts out of certain personal estate, which the plaintiff pretended to sell. to the defendant, and in consideration of which the bond was given. The Court held that the plaintiff could not recover on the bond.

In the case of *Nichol* v. *Cabe*, 3 Head, 91–93, Asbury Nichol was in jail in Cocke County, on a charge of counterfeiting; and, being anxious to procure bail, and for the purpose of qualifying a friend named Aaron R. Clark to become his bondsman, made Clark a deed to his land, in which he recited $400 as the consideration paid, but there was not, in fact, any money paid, or to be paid for the conveyance. Clark was refused as bondsman, and Nichol was convicted and sent to the penitentiary, where he soon died. Clark took possession of the property and conveyed it to Cabe, who was his stepson; and Clark left the country. Cabe paid nothing for the land and knew of the circumstances why the land was conveyed to Clark. The widow and children of Nichol brought suit to recover the land, on the ground that the deed from Nichol to Clark was a mortgage, etc., which had been satisfied. The Chancellor dismissed the bill because the object in conveying to Clark was improper and against public policy, and it was appealed to this Court. Judge Caruthers, in delivering the opinion of this Court, said: "It is insisted that the whole scheme was to get the criminal out upon bail, that he might make his escape from justice. If that were so, it

would be such an unlawful purpose as would stain the hands of all concerned and exclude them from the Courts.'' But there was no evidence that such was the intention.   Mr. Story's Eq. Jur., 257, says: '' In general, a contract which contemplates a fraud upon third parties, is regarded as so ` far illegal between the immediate parties that neither will be entitled to claim the aid of a Court of Equity in its enforcement.''

But none of these cases go so far as the case of *Swan* v. *Castleman.*   In that case, after referring to the above authorities, this Court go further, and hold that, though a conveyance obtained by fraud be only voidable, and can be impeached and set aside only at the suit of party defrauded or his privies, yet, if the property conveyed is in the possession of a third party, and the fraudulent conveyee has come into Court of Equity for assistance in the assertion of his claim and to obtain the benefit of his fraud, he will be repelled, upon the maxim that '' he who comes into that Court asking its aid, must do so with clean hands.''   This is not to give active relief to a party who has no title, but is simply a principle on which his opponent is repelled from the Court, the Court helping neither the one nor the other—not the complainant, because it would be helping him reap the benefit of his fraud; nor the defendant, because he might have no legal title, yet, being defendant and in possession, his condition is best.   4 Bax., 257–270.

Harton *v.* Lyons.

The heirs of Fannie T. Hicks, deceased, were never in possession of said land. She was a fraudulent conveyee, from whom they claim to inherit their title. We think that the heirs of a fraudulent conveyee, who have never been in possession, should not be allowed to recover land of a defendant who has purchased it for full value, without fraud on his part, from the fraudulent conveyor, who was in possession, exercising ownership and control over it at the time of the purchase of him.

The title of Fannie T. Hicks, deceased, having been acquired through fraud, her heirs, being out of possession, cannot set up their title and recover possession from the defendant, who is in possession under his purchase from the fraudulent conveyor, in possession and control, for full value, without fraud on the part of defendant. Not being able to show a clean title in themselves, they cannot recover on the weakness of defendant's title, their title having been acquired through a fraudulent conveyance, and they being out of possession; and defendant, Lyons, being in possession and defendant, as such had the right to impeach their title for fraud and repel them from a Court of Equity, without showing a legal title in himself.

The decree is affirmed.