# DAVE PRESTON et al. v. MARSHALL SMITH et al.*
## —293 S. W. (2d) 51.

Middle Section.   December 2, 1955.

Petition for Certiorari granted by Supreme Court March 9, 1956.

Affirmed by Supreme Court July 20, 1956.

---

*Published on suggestion of members of the Supreme Court.

H. B. McGinness, Carthage, for complainants.

Solon Fitzpatrick, W. H. Turner, Carthage, for defendants.

SHRIVER, J. Parties will be referred to as the plaintiffs, and defendants as they appeared in the Court below.

I

This is an ejectment suit to recover 60 acres of land in Smith County.

Complainants assert title to the land as the collateral heirs at law of one John Preston, who died intestate in the year 1950, while the defendants claim the same land as collateral heirs at law of Mrs. Maltie Smith Preston, wife of the said John Preston, she having died intestate in the year 1954.

John Preston and Maltie Smith Preston were married in 1908 and never had any children.

They moved on the farm involved herein in 1910 and lived thereon as their home, together, until John Preston died in October 1950.

Maltie Smith Preston continued living on this land and operated it as a farm, after John Preston's death, until she died in June 1954.

Homestead and dower were never set apart to the widow.

The material facts are not in dispute.

Possession of the land in question from 1910 until the death of John Preston in 1950 was adverse in character. This was alleged in the bill and averred in the answer, substantiated by the proof and found as a fact by the Chancellor.

There was no proof of a purchase of the land by the husband and wife, or either of them, and there is no deed or other muniment of title in the record, hence, title in either or both of these parties is dependent upon 20 years adverse possession without color of title.

Complainants seek to recover the land from the defendants on the theory that John Preston acquired title to it by 20 years exclusive possession of same, adversely to the whole world.

Defendants aver that John Preston and wife purchased the land described in the bill, jointly, and held same as tenants by the entirety. They further aver that Maltie Smith Preston had property of her own and that she and her husband had an agreement that they would use her property with what he had, to buy this land, and that they would own it jointly, the survivor to take the whole of it.

It may be stated in this connection that the proof does not substantiate the averments in the answer as to the purchase of the land or that the wife's money was used in the purchase of same.

Defendants denied that John Preston held the land adversely to his wife but aver that he and his wife jointly held the land adversely from 1910 until the death of John Preston on October 1, 1950 and that, after his death, Maltie Smith Preston continued to occupy it as hers, adversely, until her death.

## II

The Chancellor held that it was a joint adverse possession of the husband and wife, in consequence of which they acquired prescriptive title to the land as tenants in common, with the result that the heirs at law of John Preston are now, collectively, the owners of a one half undivided interest therein, and that the heirs at law of Maltie Smith Preston are, collectively, the owners of the other one half undivided interest in same.

Both complainants and defendants have appealed and have assigned errors.

## III

### Assignments of Error.

The complainants' assignments of error go to the proposition that, at common law, the legal existence of the wife was merged and incorporated in that of the husband, they being one in contemplation of law, and that the joint, naked adverse possession of land by husband and wife was a legal impossibility; that the possession of

land occupied by husband and wife, whether before or subsequent to the passage of the Married Woman's Emancipation Act, Code, sec. 8460, is, in law, the possession of the husband as the head of the family.

It is, therefore, assigned as error that the Court failed to find in favor of the complainants as the heirs at law of John Preston, and in taxing the complainants with half of the costs of the suit.

On the other hand, the defendants assigned as error the action of the Chancellor in holding that John Preston and his wife held and owned this land as tenants in common; it being asserted by the defendants that, as husband and wife, they became tenants by the entirety, and, upon John Preston's death, the property was that of the wife alone.

It is further assigned as error that the chancellor failed and refused to hold that the complainants were guilty of laches and were estopped from setting up their claim to this land by reason of the fact that they waited until June 1954, after the death of Maltie Smith Preston, before asserting their claim.

Certain errors are assigned in respect to the rulings of the Chancellor on evidence offered by the parties.

## IV

Thus, the questions to be determined here are (1), whether the naked adverse possession of land occupied by a husband and wife, beginning in 1910, resulted in a prescriptive title in the husband alone, after the expiration of the 20 years or, (2), as is insisted by defendants, did such adverse possession result in title in them as tenants by the entirety, or, (3), did it result in title in the husband

and wife as tenants in common, as was held by the Chancellor.

## V

■ 1. Twenty years continuous adverse possession of land under claim of right has the legal effect of vesting the possessor with the fee simple title thereto.

This proposition is so well settled that it is unnecessary to cite authorities in support thereof.

2. The Chancellor, in considering this case, rendered a memorandum opinion and finding facts where he said:

"Complainants claim possession enured to John alone, while defendants insist it was a joint possession.

"The burden of proof is of course on the complainants. The complainants cannot rely on the weakness of defendants' title. The determinative question appears to be whether, under the facts, John Preston held adversely and to the exclusion of his wife. Was it the adverse possession of John alone to the exclusion of his wife Maltie, with the result that he alone acquired title to the land by prescription?

"There was no grant or devise. Therefore, it is my opinion that title did not vest in John and Maltie as tenants by the entirety. No authority is cited or found that an estate by entirety can arise by prescription. It is also true, as I understand the law, that a husband can not hold adversely to his wife, and there is proof in the record which indicates John was not claiming or holding adversely to his wife, however, it is insisted by complainants that, in the absence of any showing of any interest or estate in the

wife in her own right, the legal possession was that of the husband alone, as the head of the family, before and after the passage of the Woman's Emancipation Act.

"After due consideration of the record and the authorities, I am of the opinion that the joint possession of John and Maltie Preston, as shown, especially subsequent to the Emancipation Act, was not the possession alone of the husband as the complainants insist in this case, in the absence of a color of title in John Preston. I am therefore of the opinion that his heirs cannot maintain this ejectment against the heirs of his wife Maltie. Under this view of the case it is not necessary to consider or apply the plea of laches and estoppel to determine the case.

"The complainants not having shown a perfect title and right to possession to the exclusion of Maltie Preston and her heirs, the bill must be dismissed at the cost of complainants."

After a decree was entered pursuant to the foregoing opinion of the Chancellor, a petition to rehear was filed on behalf of complainants.

Thereafter, and in response to the petition to rehear, the Chancellor filed a memorandum opinion wherein he stated as follows:

"Upon further consideration of the record, the briefs and the authorities cited, I am of the opinion that, under the facts, this was a joint possession of John and Maltie Preston, his wife, and was not the possession of the husband alone. I think at the end of the 20 years adverse possession they both got the

benefit of the presumption of the vestiture of title, and became tenants in common.

"It appears to me that since the enactment of the Woman's Emancipation Act, if not prior thereto, a wife could jointly possess land with her husband. She could do so before the passage of the Emancipation Act when she had title, or color of title. To hold that because the husband is the technical or theoretical head of the family would by operation of law make any adverse possession the possession of the husband, would appear to read an exception into the Emancipation Act, which is not in the Act, and which was not intended. It is my opinion that they held jointly as against the true owners in the absence of direct authority to the contrary.

"So for the reasons stated in this, and as heretofore stated in the original opinion, I must respectfully deny the first ground of the petition to re-hear.

"I think the second ground of the petition to re-hear is good. I am of the opinion that under the facts and the record I was in error in dismissing the bill outright. It is my opinion that complainants are entitled to recover a one-half undivided interest, as tenants in common, in the land in question.

"I find, and am of the opinion, upon further consideration of the record and the authorities, that an actual ouster of complainants by defendants is shown. The acts and contentions of the defendants, claiming all the land in question, amount to a denial of complainants' rights as co-tenants, or tenants in common.

"Even though complainants in their bill claim title to all the land, it is my opinion that under Code Section 9132 and 9135, and the authorities, the complainants are entitled to a decree for one-half undivided interest in the land.

"The petition to re-hear is accordingly sustained to this extent, and for satisfactory reasons appearing I am further of the opinion that the cost should be divided equally."

We concur in the Chancellor's finding of facts in his opinions and decrees in this cause.

3. It is asserted in the able brief of counsel for complainants that, at the common law, husband and wife were not two persons but constituted a legal entity of which the husband was the head; citing numerous authorities including Gill v. McKinney, 140 Tenn. 549, 205 S. W. 416, Bennett v. Hutchens, 133 Tenn. 65, 179 S. W. 629, and McCorry v. King's Heirs, 22 Tenn. 267.

It is also asserted that, at common law, a married woman, while living with her husband, could not commit an act of disseisin, being incapable of such act, citing Marr's Heirs v. Gilliam, 41 Tenn. 488. That is to say, that Mrs. Maltie Preston, because of her disability of coverture, could not have committed an act of disseisin along with her husband in 1910, and thus could not and did not become a joint adverse possessor along with him.

While the authorities do support the proposition that, at common law, a married woman could not commit a separate act of disseisin, we do not construe them to hold that it was impossible for her and her husband to commit such act jointly, for their joint and separate benefits.

Counsel for complainants say further, "And so it is, as we respectfully insist, common law principles applied, the forty years naked adverse possession of the land in question was, in law, the possession of John Preston alone and not a joint possession of himself and wife as held by the Chancellor."

Considering this proposition first.

In Ames v. Norman, 36 Tenn. 683, it was said:

"The act of 1849, ch. 36 (Code, Sec. 2481), which protects the lands of the wife from the creditors of the husband, has reference alone to such lands as the husband may hold or claim in right of the wife. It applies only to cases where the fee is in the wife alone, and not to cases where they are jointly seized in fee. (Cited in Johnson v. Sharp, 4 Cold. 45, 50.)

\* \* \* \* \* \*

"The tenancy by entireties, as of husband and wife jointly seised of an estate in fee in land, is dependent for its existence upon the matrimonial union. So, in a conveyance of land to a man and woman while single, if they afterward intermarry, as they took originally by moieties, they will continue to hold by moieties after the marriage."

Thus it will be seen that this early case, decided in December 8, 1857, recognized that husband and wife would hold land jointly as tenants by the entireties when land was conveyed to them as husband and wife, but that, when such land was conveyed to them before marriage, they could continue to hold it by moieties after their marriage.

This seems to confirm the fact that our courts have recognized the legal identity of both husband and wife and their possible separate legal existence in this state, even under the common law.

Again, in the case of Johnson v. Lusk, 46 Tenn. 113, 114, there was involved the question of the right of a widow, as survivor, to certain notes that had fallen into the hands of the executor of her deceased husband. Chancellor William F. Cooper, sitting as Special Chancellor, rendered judgment in favor of the widow and it was appealed.

The Supreme Court said that common law principles applied and that the precise question was an open one in this state.

After stating that, where real estate is conveyed to husband and wife, they take but one estate which continues in the survivor, the question is posed whether the rule was also applicable to choses in action.

In discussing the question the court stated, 46 Tenn. at pages 119-120:

"* * * where an obligation is taken to husband and wife, or to the wife alone, with the assent of the husband, the action survives to the wife, who is entitled to the proceeds, as against the heirs and personal representatives of the husband. In such a case, the form of the security implies a design by the husband to benefit the wife; and the law will give effect to this intention, where the interest of creditors is not affected. The rule seems to be well settled, that an agreement with a feme covert, and a promise to her personally, raises a presumption that she is the meritorious cause of such agreement, and it will survive

to her. [Borst v. Spelman], 4 N. Y. 284; [Draper v. Jackson] 16 Mass. [480], 483; 2 Redfield on Wills, 175 to 178; [Creditors of Earle & Freeman v. Millard] 2 R. I. 517.''

Once again in Alfred v. Bankers' and Shippers' Ins. Co., 167 Tenn. 278, 68 S. W. (2d) 941, 942, in an opinion by Mr. Chief Justice Green, delivered in 1933, among other things it was said:

"It is true that as tenants by the entirety the husband and wife are regarded as one. It is, however, a composite one. The unit consists of both husband and wife. Certainly, in a technical sense, the husband is not the sole and unconditional owner of property held by him and his wife as tenants by the entirety, nor is he such owner for practical purposes.''

In 13 R. C. L., at page 1047 under the title ''Rights of Husband in Wife's Realty'', it is said that the law gives the husband the same right over the real estate of the wife which comes to her after marriage as if it belonged to her at the time of marriage and that this interest of the husband is generally a freehold estate since it must usually continue during their joint lives, but, as is stated in the text, it has been held that the husband is not seized alone, but that he and his wife together are, in right of the wife, seized of the freehold.

■ Considering all of the available authorities in Tennessee we are persuaded to believe that the 40 years naked adverse possession of the land in question was not, necessarily, the possession of John Preston alone. The courts have reconized that it was possible for a husband and wife, even at common law, to jointly possess land either as tenants by the entirety or as tenants in common.

4. Counsel for complainant insist that the issue of whose was the possession must be resolved upon the consideration, and by application of the common law principles in force in this State at the commencement of the adverse possession of the land involved, that is to say, that it must be resolved under the law as it existed in 1910.

Some four years of this adverse possession had run prior to the effective date of the Married Woman's Emancipation Act of 1913 (or Jan. 1, 1914) and this poses the question as to whether the prescriptive title, if it was a joint one, was acquired in 1930 or in 1934, and whether or not the Married Woman's Emancipation Act so changed the status of the parties as to affect the ultimate title.

It must be remembered that, when the Married Woman's Emancipation Act became effective, the parties had been in possession of the land about four years, or a little less, and, at that time, John Preston had acquired no prescriptive or other rights against the actual owners, even assuming that the adverse possession was his alone.

It seems to this Court that the law, as it existed at the time 20 years adverse possession was perfected and title passed, would control, rather than the law as it existed in 1910 at the beginning of the adverse possession.

The effect of adverse possession is subject to change by statute at any time.

It is to be noted, also, that the actual, or physical, possession by the husband and wife was not changed as of the effective date of the Married Woman's Emancipation Act, they had both lived on the land during the three

or four years prior thereto. The only thing that was changed was the wife's disability of coverture, which was abolished.

5. Section 8460 of Williams' Ann. Code contains the Married Woman's Emancipation Act, Chap. 26, Acts of 1913, as modified by the Acts of 1919, and it provides that married women are fully emancipated from all disability on account of coverture.

■ The common law as to the disability of married women, and its effects on the rights of the property of the wife is totally abrogated, except as to certain exceptions in subsequent paragraphs, which have no relation to the question involved here.

It further provides that marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition of disposition of property of any sort.

It was said in Parlow v. Turner, 132 Tenn. 339, 178, S. W. 766, that this statute is not unconstitutional as destroying vested rights of the husband in his wife's property though the marriage occurred before the passage of the act, and that the legislature had the power to interfere, as it did by this act, before the contingency had ceased and the right had developed into vested right in praesenti. Citing also Baker v. Dew, 133 Tenn. 126, 179 S. W. 645.

It was held by the Court in Alfred v. Bankers' and Shippers' Ins. Co., 167 Tenn. 278, 68 S. W. (2d) 941, that the husband, a tenant by the entireties under the common law, had a measure of domination by reason of the rule of jus mariti which rule has been changed by this section, so that he no longer dominates.

It was said in Pattison v. Baker, 148 Tenn. 399, 255 S. W. 710, 29 A. L. R. 1334, that, by Chapter 26, Acts 1913, tenancy by the entirety was abolished, but, by the Acts 1919, Chapter 126, it was reestablished. *A deed to husband and wife during the intervening period vested an estate in the two as tenants in common.*

In Hicks v. Sprankle, 149 Tenn. 310, 257 S. W. 1044, it was said that chapter 26, Acts of 1913, removed the legal unity from which the estate by entirety was implied.

■ Thus we see that it has been repeatedly recognized in this State that a husband and wife may occupy the position of joint tenants, that is, tenants by the entirety or tenants in common, and that the possession of the husband and wife together does not, necessarily, mean the possession of the husband alone.

## VI

There is substantial evidence in this record that John Preston and his wife both understood and intended that their adverse possession of this land would inure to the joint benefits of the two and not to sole benefit of the husband. For instance Alvin Smith testified that he had heard John Preston say many times that he and his wife owned this property. Luke Winfree testified that he had heard John Preston and his wife both say several times that they owned it together.

In 2 C. J. sec. 233, p. 135, it is said:

"The possession of one who recognizes or admits title in another before the statutory period has elapsed either by declaration or conduct is not adverse to the title of such other until such occupant has changed the character of his possession either by

express declaration or by exercise of actual owner-
ship inconsistent with subordinate character. Such
recognition likewise prevents acquisition of title by
adverse possession by his heirs and representa-
tives." [See, also, 2 C. J. S., Adverse Possession,
sec. 81].

It is said in Brooks, Neely & Co. v. Lowenstein, 95
Tenn, 262, 35 S. W. 89, 91:

" 'Declarations of a person in possession of prop-
erty, explaining and characterizing that possession,
and showing in what capacity he holds, whether as
owner, solely or jointly, or as the agent, tenant, or
trustee of another, and the like, are regarded as res
gestae of the possession; and, when that or the own-
ership of the property are under inquiry, such dec-
larations are received as explanatory of the posses-
sion.' "

In Harton v. Lyons, 97 Tenn. 180, 36 S. W. 851, 853, it
was said,

"The court is of the opinion that the proof of the
statements made by John R. Hicks immediately after
he made said deed to Pearcy, and at different times
after that, while he was in possession, controlling
and managing said land, were entirely competent as
part of the res gestae of the possession, as explana-
tory of his possession."

In Tom Love Co. v. Maryland Casualty Co., 166 Tenn.
276, 61 S. W. (2d) 672, it was held that, declarations as
to revelant facts are admissible when it appears that
the declarant is dead and that the declaration was made
against his pecuniary or proprietary interest and that he
had no probable motive to falsify the fact declared.

In Nashville, C. & St. L. Ry. Co. v. Graham, 5 Tenn. App. 121, it was said that, prior to the Married Woman's Emancipation Act, where a husband manifested an intention to waive his rights and permit his wife to retain her separate estate, the courts of equity would not deprive her of the same, especially when creditors were not deprived of any of their rights thereby. See also McCampbell v. McCampbell, 70 Tenn. 661, re proof of intention and power of equity to enforce same.

In Tuggle v. Southern Railway Co., 140 Tenn. 275, 204 S. W. 857, the complainant alleged that she had been in adverse possession of a certain house and lot for more than seven years and that, during part of that time, she and her husband occupied it together. It was insisted by the defendant that she could not tack her possession to that of her husband, and, without doing so, she could not show seven years adverse possession. The Court said that, while it is true, as a matter of law, that she could not tack her possession to that of her husband, nevertheless, it appeared from the record that more than seven years before the suit was brought, the husband gave his interest in the house and lot to his wife. He had just taken possession, hence, all the right that he had at that time was, possession. The evidence showed that, from that time forward, she held for herself, and that, as a matter of law, she could do so by agreement between herself and her husband, even though that agreement was only in parol.

██ Thus, we are of opinion that, under the proof in this case, and from the record as a whole, John Preston and his wife held this property jointly, and it was not considered by them as the exclusive property of John Preston. This intention and purpose having been ex-

pressed by Preston and his wife, a Court of equity has the power and authority, as well as the duty, to enforce same.

## VII

We now come to perhaps the most difficult question in this law-suit, to wit: whether the estate acquired by this husband and wife was one by entirety, or, as the Chancellor held, an estate in common.

In Tiffany on Real Property, Third Ed., sec. 430, tenancy by the entirety is defined as follows:

"Tenancy by the entireties (or by the entirety) is the tenancy by which husband and wife at common law held land conveyed or devised to them by a single instrument which does not require them to hold it by another character of tenancy. The title of both husband and wife arises out of the instrument, whether deed, devise or gift, by virtue of which they become seized of the estate."

And in American Law of Property, Vol. II, sec. 6.6, page 25, as quoted in the brief of counsel for complainants, it is said:

"Today, tenancy by the entirety arises only when the grantor or testator intends that it should. Husband and wife take as tenants in common or joint tenants if the conveyance so indicates. If the conveyance is to the husband and wife without any affirmative expression of how they are to take, there is a presumption that they take by the entirety."

In Holt v. Holt, 185 Tenn. 1, at p. 653, 173 A. L. R. 1210, it is said:

"To create an estate by the entirety, all four unities must coincide; these are: Unity of interest, of time, of title and of possession."

And again in Bennett v. Hutchens, 133 Tenn. 65, 179 S. W. 629, 631, it is said:

" 'The unity of interest, the unity of title, the unity of time, and the unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession.' "

Counsel for complainants quotes from Blackstone's Com. Book II, 108, as follows:

"The creation of an estate in joint-tenancy depends on the wording of the deed or devise by which the tenants claim title; for this estate can only arise by purchase or grant, that is, by act of the parties and never by act of law."

Again in Tiffany on Real Property, Third Ed., we find the statement that tenancy by the entirety, though differing from a joint tenancy in some particulars, is essentially a form of joint-tenancy, modified by the common-law theory that husband and wife are one person.

Counsel for defendants argue with considerable force that, after twenty years adverse possession of land, there is a presumption of a grant that, by force of such presumed grant, the husband and wife are vested with an estate by the entirety. However, they produce no authority directly on this point, and the Court, after considerable research, has been unable to find any to the effect

that an estate by the entirety may arise out of adverse possession.

In Ferrell v. Ferrell, 60 Tenn. 329, it was said in reference to the presumption of a grant after·twenty years adverse possession:

"It is based on reasons of public policy and to quiet title, and is a presumption of law in favor of long continued possession."

In the leading case of Cannon v. Phillips, 34 Tenn. 211, at page 214, it is stated as follows:

"The doctrine of presumption of title rests upon the simple fact of long continued use and enjoyment, and requires no aid from 'color of title.' Possession of land is prima-facie evidence of title. The law supposes that it had a legal origin, and when undisturbed for a period of twenty years, it becomes, in view of the law, an assurance of title of no less force or efficacy than the actual grant whose place it supplies. The presumption is not founded upon the idea that as a matter of fact a grant once existed, nor is it aided by the fact that the possession may have been held under some defective form of assurance; it rests alone upon a principle of public policy, to quiet the title of those who can show no other title than long continued possession and use."

It is thus argued by counsel for complainant in his reply brief, that the presumption being regarded as one of law, it follows that title by prescription is acquired by operation of law. And, since an estate by the entirety cannot arise by operation of law, but must originate in a grant or devise, it follows that such estate does not

vest in a husband and wife as tenants by the entirety, but, if it vests in them jointly, by reason of joint adverse possession, it must be as tenants in common.

As was said in Dunn v. Eaton, 92 Tenn. 743, 23 S. W. 163, a general statement of the doctrine from the authorities is that the presumption of a grant is indulged merely to quiet a long possession where those in possession might be unable to produce muniments of title which were actually given at the time of the acquisition of the property *by him or those under whom he claims.* It is said, therefore, that it is not necessary, in order to presume a conveyance, to believe that a conveyance was, in point of fact, executed.

Thus it seems that the presumption under consideration here is that of a grant to the possessor, or to some one through whom the possessor claims. Hence the presumption, if regarded as one of fact, is not of a conveyance to Preston and wife, but one of a conveyance, either to them, or to another, or others, through whom they might claim.

It is said by a number of authorities that the creation of an estate by the entirety is one of intention and that it must appear from the instrument or the conveyance itself and was intended to create such an estate.

No presumption can be indulged as to such intention in the case at bar and, if it could, it could not be utilized under the familiar rule that one presumption may not be the basis of another presumption. This rule is too well settled to require citation of authorities.

In the case of Holt v. Holt, 185 Tenn. 1, 202 S. W. (2d) 650, 173 A. L. R. 1210, the Supreme Court, speaking

through Mr. Justice Gailor, declined to hold that an estate by the entirety was created where there was a deed of partition, because, as the court said, there was no unity save that of possession at the time of the release, and to create an estate by the entirety, unity of interest, time, title and possession must coincide.

This case further illustrates the strict application that the courts have made of the rules with respect to the creation of estates by the entirety.

It is suggested that there is no basis for the creation of an estate in Preston and wife as tenants in common either at common law or under our present statutes. It is to be recalled however, that, upon passage of the Married Woman's Emancipation Act, it was held by our Courts that it destroyed tenancy by the entirety and that, thereafter, husbands and wives became tenants in common in the lands jointly acquired by them, and this condition existed until 1919 when by legislative act, tenancy by the entirety was reestablished in Tennessee.

Thus, there is no fundamental or inherent reason why husband and wife in Tennessee could not hold as tenants in common.

The learned Chancellor in this case came to the conclusion that an estate by the entirety could not arise by operation of the statutes of limitation, but that it arose only from devise, deed or other instrument and that, therefore, the husband and wife in this case, under the facts, were holding jointly as tenants in common.

This Court is of opinion that the Chancellor's conclusion in this respect was the most reasonable one to be derived from the record herein.

It is further to be observed that a court of equity has the power and authority to make a decree based upon equitable principles in the light of all the facts and circumstances involved.

It results that the judgment of the Chancellor is affirmed and the costs will be divided equally.

Affirmed.

Felts and Hickerson, JJ., concur.