## STEVENSON *v.* EWING.

### (*Knoxville.*　September 27, 1888.)

REAL ESTATE BROKERS. *Commissions. License.*

> Real estate brokers are forbidden by Acts 1885, Ch. 1, § 46, to pursue their avocation *without license;* and an *unlicensed broker,* who, in violation of this act, negotiates the sale of land for another, cannot recover any compensation for his services. The *contract for compensation* in such case is illegal and void.

Act construed: Acts 1885, Ch. 1, § 46.

> Cases cited and approved: Perkins *v.* Watkins, 2 Bax., 187; Ins. Co. *v.* Ins. Co., 11 Hum., 11; Hale *v.* Henderson, 4 Hum., 200; Dillon *v.* Allen, 46 Iowa, 299 (26 Am. R., 145); Holt *v.* Green, 73 Penn., 198 (13 Am. R., 738); McConnell *v.* Kitchens, 20 S. C., 430 (47 Am. R., 845); Wood *v.* Armstrong, 54 Ala., 150 (25 Am. R., 671); Johnson *v.* Heelings, 103 Penn., 498 (49 Am. R., 131); Johnson *v.* Hudson, 11 East, 100.

---

### FROM HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County.　D. C. TREWHITT, J.

A. C. DOWNS for Stevenson.

YOUNG & BARR for Ewing.

CALDWELL, J.　Ewing was a real estate broker, doing business in Chattanooga. Claiming to have sold a house and lot for Stevenson, he brought

Stevenson *v.* Ewing.

this action, before a Justice of the Peace, to recover a sum alleged to be due him as commissions for the sale.

The case was appealed to the Circuit Court, and there tried. Verdict and judgment were in Ewing's favor for $200. Stevenson has appealed in error to this Court.

In the Court below it was contended by Stevenson that Ewing had not paid the privilege tax and procured the license required by statute of persons pursuing his avocation, and that for that reason this suit could not be maintained.

The evidence tended to show that Ewing had not paid the tax and taken out license at the time he claimed to have made the sale. But the trial Judge, not agreeing with the defendant as to the law applicable, instructed the jury that the failure of Ewing to pay the tax and procure the license, if established, would not defeat this action.

This instruction is assigned as error.

The sale, for the making of which Ewing claims commissions, was made, if made at all, in February, 1887.

The Act of 1885, then in force, declares that the occupation of a real estate broker " shall be deemed a privilege, and be taxed, and *not pursued or done without license.*"   Acts 1885, Ch. 1, Sec. 46.

Here is an express prohibition of all unlicensed persons to act as real estate brokers, and, consequently, a prohibition, by necessary inference, of all contracts which such persons shall make for

compensation to themselves for so acting. By the clear and unambiguous terms of the statute the real estate broker is forbidden to pursue his business "without license;" and, it follows that, if he presumes to do so, his acts are in violation of law, and all contracts for his benefit are illegal and void.

If he fails to equip himself with the required authority for the transaction of his business the law will deny him its aid when he seeks to enforce his contract for commissions.

We confine this holding, however, to the unlicensed broker's contract with his principal, and do not extend it to the independent contract made between vendor and vendee, whom he brings together.

Judge Cooley says:

"When the tax takes the form of a tax on the privilege of following an employment, convenience in collection will commonly dictate the requirement of a license, and the person taxed will be compelled to pay the tax as a condition to the right to carry on the business at all. In such case the business carried on without a license will be illegal, and no recovery can be had upon contracts made in the course of it." Cooley on Taxation (2d ed.), p. 572.

It is familiar law, both in England and America, that a contract prohibited, either expressly or impliedly, by statute is illegal, and cannot be enforced. *Perkins* v. *Watkins*, 2 Bax., 187; *Ins. Co.* v. *Ins. Co.*,

11 Hum., 11; *Hale* v. *Henderson*, 4 Hum., 200; Benj. on Sales (4th Am. Ed.), §§ 818, 825; Addison on Con., § 294; *Holt* v. *Green* (73 Penn., 198), 13 Am. R., 738; *Dillon* v. *Allen* (46 Iowa, 299), 26 Am. R., 145; *McConnell* v. *Kitchens* (20 S. C., 430), 47 Am. R., 845; *Wood* v. *Armstrong* (54 Ala., 150), 25 Am. R., 671; *Johnson* v. *Heelings* (103 Penn., 498), 49 Am. R., 131.

It is earnestly insisted by learned counsel for Ewing that the *sole purpose* of the Act under consideration is to raise and secure the collection of revenue, and not to prevent the business of real estate brokers as being against good morals or contrary to public policy; and that, such being the purpose of the Act, the Courts should construe it so as not to effect the validity of the contracts of such brokers, though made without license.

The rule of construction thus insisted upon is sound and well recognized.

But there is no room for its application in this case. It is called into requisition by the Courts, only when there is doubt, from the language of the statute itself, whether or not the Legislature intended to prohibit the exercise of the privilege without license.

We have already seen that no such doubt exists with respect to the language of the Act before us. The *prohibition* is distinct and absolute. That ends all construction.

Mr. Benjamin, in his excellent treatise on sales, reviews the leading English cases on this subject,

beginning with *Johnson* v. *Hudson* (11 East, 100), decided by the King's Bench in 1809, and from them declares these propositions:

"*First*, That where a *contract* is prohibited by statute it is immaterial to inquire whether the statute was passed for revenue purposes only, or for any other object. It is enough that parliament has prohibited it, and it is therefore void.

"*Secondly*, That when the question is *whether* a contract has been prohibited by statute it *is* material, in *construing* the statute, to ascertain whether the Legislature had in view *solely* the *security and collection of the revenue*, or had in view, in whole or in part, the protection of the public from fraud in contracts, or the promotion of some object of public policy. In the former case the inference is, that the statute was not intended to prohibit contracts; in the latter that it was.

"*Thirdly*, That in seeking for the meaning of the law-giver it is material, also, to inquire whether the penalty is imposed once for all, on the offense of failing to comply with the requirements of the statute, or whether it is a recurring penalty, repeated as often as the offending party may have dealings. In the latter case, the statute is intended to *prevent the dealing*, or *prohibit the contract*, and the contract is therefore void; but in the former case such is not the intention, and the contract will be enforced."

2 Benj. on Sales (4th Am. ed.), § 825.

This case falls under the first of the foregoing propositions; and not under the second, as counsel for the appellee has insisted.

It follows that the instruction of the trial Judge upon this point was erroneous.

He should have charged the jury as already indicated in this opinion.

It was also error to reject evidence, offered by Stevenson, tending to show great enhancement in the value of his property between the time Ewing claims to have become his agent and the time of the alleged sale.

This evidence was competent upon the question of good faith, which the law required the agent to exercise in the highest degree.

Reverse and remand for a new trial.