Cantrell v. Ring.

R. L. CANTRELL *v.* J. H. RING *et al.*\*

(*Nashville.* December Term, 1911.)

1. **CONSTITUTIONAL LAW.** Statute regulating bulk sales of
   merchandise is a valid and constitutional exercise of the
   police power.

   The statute (Acts 1901, ch. 133), construed as an enactment of sub-
   stantive law making sales of merchandise in bulk in violation
   of its provisions absolutely void, is a valid and constitutional
   exercise of the police power for the regulation of trade and
   the prevention of fraudulent sales by merchants to the injury
   of their creditors. (*Post, pp.* 477, 478.)

   Acts cited and construed: Acts 1901, ch. 133.

   Cases cited and approved: Neas v. Borches, 109 Tenn., 398;
   State v. Mill Co., 123 Tenn., 404; Lemieux v. Young, 211 U. S.,
   489; Jaques & Tinsley Co. v. Carstarphen Co., 131 Ga., 7-17;
   Squire v. Tellier, 185 Mass., 18; McDaniels v. Shoe Co., 30
   Wash., 549.

2. **SALES OF MERCHANDISE IN BULK.** Without compliance
   with statute regulating same are fraudulent in law and
   absolutely void.

   The statute (Acts 1901, ch. 133), providing that the sale in bulk
   of a stock of merchandise, or any portion thereof, otherwise
   than in the ordinary course of trade, in the regular and usual
   prosecution of the seller's business, shall be presumed to be
   fraudulent and void as against the creditors of the seller, unless
   the seller and purchaser shall, at least five days before the
   sale, make a full and detailed inventory showing the quantity,
   and so far as possible, with the exercise of reasonable dili-

---

\*Constitutionality of bulk sale legislation, see notes in 2 L. R. A.
(N. S.), 331; 20 L. R. A. (N. S.), 160.

gence, the cost price, to the seller, of each article to be included in the sale, and unless such purchaser shall, at least five days before the sale, in good faith, make full and explicit inquiry of the seller as to the names of his creditors and their addresses, and notifies them personally, or by registered mail, of the proposed sale, the cost price, and the price to be paid therefor, is construed and held to be a substantive law declaring such sales without compliance with its said provisions to be fraudulent in law and absolutely and conclusively void, though there be no fraud in fact, and not simply a statute prescribing a rebuttable presumptive rule of evidence. (*Post*, *pp.* 474-482.)

Acts cited and construed: Acts 1901, ch. 133.

Case cited and approved: Jaques & Tinsley Co. v. Carstarphen Co., 131 Ga., 15, 16.

3. SAME. Same. Seller's concealment of the larger part of his creditors and indebtedness avoids sale under statute regulating such sales; case in judgment.

Where a retail merchant, the owner of a retail stock of goods, contracts to sell or to exchange his entire stock at a given price, without inventory or notice to his creditors, to whom he was then indebted for a large part thereof, but after the contract was made, and on demand of the purchasers, gave them a list of his creditors and indebtedness, but concealed the larger part thereof, and the inventory then taken amounted to about one-third of the represented value of the goods, whereupon the purchasers refused to complete the purchase, the sale so attempted to be made was fraudulent in law, void, and nonenforceable, because of the noncompliance with the statute (Acts 1901, ch. 133), regulating the sales of merchandise in bulk, as stated in the preceding headnote, without regard to the question of fraud in the misrepresentation of the value of the goods. (*Post*, *pp.* 480-482.)

Acts cited and construed: Acts 1901, ch. 133.

Cantrell v. Ring.

4. **CONTRACTS.** In violation of law, or that are immoral or against public policy, are not enforceable.

An action will not lie to enforce a contract made in violation of a statute or of the common law, or which is immoral in its character, or contrary to public policy.  (*Post, p.* 482.)

Cases cited and approved:  Parks v. McKamy, 3 Head, 297, 298; Stephenson v. Ewing, 87 Tenn., 46; Haworth v. Montgomery, 91 Tenn., 16; Insurance Co. v. Kennedy, 96 Tenn., 714; Harton v. Lyons, 97 Tenn., 193; Watterson v. Nashville, 106 Tenn., 410.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

R. L. CANTRELL and B. M. WEBB, for complainant.

J. B. DANIEL and PENDLETON & DE WITT, for defendants.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

Complainant, R. L. Cantrell, brought the bill in this case, in the chancery court of Davidson county, against the defendants, J. H. Ring and W. L. Acuff, to recover damages for the breach of a written contract made with them on August 9, 1910, wherein he agreed to sell, and they agreed to purchase, a "stock of goods, merchandise, and fixtures, and lease on property at corner of Summer and Monroe streets, in the city of Nashville, Tenn.,

all things there belonging to him, for the sum of $6,000," to be paid for by the transfer to complainant of a soap factory, situated in Nashville, together with the stock on hand, formulas, and fixtures, at the price of $2,450, and "the sum of $3,550 in cash at once," conditioned "on said Ring and Acuff being able to raise the money aforesaid."

Complainant owned and was conducting a retail grocery store in the city of Nashville, and the property which he contracted to sell the defendants was the stock of goods, merchandise, and fixtures used in this business, and the lease upon the house in which the business was conducted. The contract was for a sale of all this property for a given price, to be paid as above stated, and was made in bulk, without inventory and notice to the creditors of complainant, who was then indebted for goods purchased for the business in the sum of about $2,300.

The defense made and relied upon by the defendants in their answer is that the contract for the sale of the property was fraudulent and void in law, because made in violation of chapter 133, Acts of 1901, prohibiting sales in bulk of stocks of merchandise, or any portion thereof, otherwise than in the regular course of trade, without first complying with certain things therein prescribed, and fraudulent and void in fact, because of alleged false and fraudulent representation made to them by complainant of the quality and value of goods and merchandise in stock, and other property which they agreed to purchase.

The defendants also assert that the real contract price which they agreed to pay for the property of complainant was $5,000, to be paid by a transfer of the soap factory and stock at $1,450, and $3,550 in money, conditioned upon their being able to raise the same, and that the value of the property owned by the parties, respectively, was incorrectly stated in the written instrument, at the request of complainant, to aid him in disposing of the soap factory.

The case proceeded to proof, and much testimony was taken on both sides upon the issues made in the pleadings.

The chancellor upon the entire record held for the complainant, and gave him a decree for the contract price of his property, as claimed by him, $6,000, less something over $1,000, arising from the sale of the property which complainant contracted to sell the defendants, by a receiver appointed in the cause, and by order of the court made before the hearing, by consent of the complainant, paid on one of his debts, conceded by him to be secured by a lien on the property.

The defendants assign this decree of the chancellor as error, insisting that both of the defenses presented by their answer are fully made out, and should have been sustained and the bill dismissed.

We do not consider it necessary, in the view we have taken of the case, to go into the question of fraud in fact. We think the first defense—that is, the failure of the parties to comply with the provisions of chapter 133, Acts of 1901, commonly known as the "Bulk Sales Act"

—made the contract of sale fraudulent in law and void, and that no action can therefore be maintained for a breach or noncompliance with its terms.

The statute referred to is entitled "An act to provide the terms upon which sales in bulk of stocks of merchandise, or any portion thereof, otherwise than in the ordinary course of trade, may be made." It provides that sales of stocks of merchandise in bulk, or any portion of the same, otherwise than in the ordinary course of trade, in the regular and usual prosecution of the seller's business, shall be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser shall, at least five days before the sale, make a full, detailed inventory, showing the quantity, and so far as possible, with the exercise of reasonable diligence, the cost price to the seller, of each article to be included in the sale, and unless such purchaser shall, at least five days before the sale, in good faith, make full and explicit inquiry of the seller as to the name and place of residence, or place of business, of each and all of the creditors of the seller, and cause them to be notified personally, or by registered mail, of the proposed sale, cost price of the merchandise to be sold, and price to be paid therefor, the seller to truthfully furnish said information."

This act has been sustained as a valid and constitutional police regulation of trade, to prevent fraudulent sales by merchants, to the injury of their creditors. *Neas* v. *Borches,* 109 Tenn., 398, 71 S. W., 50, 97 Am. St. Rep., 851. The principles upon which statutes of this

character are sustained are fully stated in *State* v. *Mill Co.,* 123 Tenn., 404, 131 S. W., 867.

Statutes with similar provisions have been enacted by a majority of the other States, and their validity has been sustained in most instances by their courts of last resort and by the federal courts. Some of the leading cases, in which most of the others are cited and commented on, are *Jaques & Tinsley Co.* v. *Carstarphen Co.,* 131 Ga., 7-17, 62 S. E., 82; *Squire & Co.* v. *Tellier,* 185 Mass., 18, 69 N. E., 312, 102 Am. St. Rep., 322; *McDaniels* v. *Connelly Shoe Co.,* 30 Wash., 549, 71 Pac., 37, 60 L. R. A., 947, 94 Am. St. Rep., 889; *Lemieux* v. *Young,* 211 U. S., 489, 29 Sup. Ct., 174, 53 L. Ed., 295.

The courts of the several States differ some in the construction and the effect of these statutes. In some States it is held that they merely prescribe a rule of evidence; others hold that the sales made without compliance with the statutes are voidable only as against creditors; while still others hold that the statutes are an enactment of substantive law, declaring sales made in violation of their provisions absolutely void; and this is the view this court has taken of the statute of this State.

The supreme court of Georgia, in *Jaques & Tinsley Co.* v. *Carstarphen Co.,* supra, 131 Ga., 15, 16, 62 S. E., 88, speaking through Mr. Chief Justice Fish, says:

"While the act was passed with the object of preventing persons in debt, who own stocks of goods, wares, and merchandise, from selling the same in bulk for the pur-

Cantrell v. Ring.

pose of defrauding their creditors, its subject-matter is not fraud in such sales, but is the regulation of them. It prescribed certain duties which must be performed by the buyer, and certain correlative duties which must be performed by the seller. This is regulation, pure and simple. It then, in order to enforce the performance of these duties, declares, in substance, that, unless these duties are complied with, 'such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent.' The meaning of this declaration is that the sale shall, as to such creditors, be fraudulent in law, whatever it may be in fact. This is a declaration of substantive law, and not the enactment of a conclusive rule of evidence for the ascertainment of fraud in such sales. In other words, the sale, as to creditors of the sellers, shall be void, irrespective of the question whether it was in fact made for the purpose of defrauding them, because the requirements of the statute enacted for their protection have not been complied with. Granting the authority of the legislature to regulate sales of this character, it follows that it can, when prescribing regulations for such sales, declare that, unless they are made in conformity to the statutory requirements, they shall be void as to the creditors of the seller, and it matters not whether the declaration as to the invalidity of sales not made in conformity to the statute is direct or indirect, if the purpose to declare such sales void is apparent. The purpose of the act is not to provide an efficient means for uncovering fraud already committed, by providing a conclusive rule of

evidence by which the fact of its existence may be established; but it is to prevent the commission of fraud, by providing that, in the class of sales with which it deals, certain specified requirements must be complied with, or the sale will be held to be fraudulent in law. It lays its requirements across the threshold of the transaction, and in effect declares that no contract of sale, valid as to the creditors of the seller, can be entered into unless these requirements are observed."

This court has so construed the statute of this State in a number of unreported cases, and after a re-examination of the question, we adhere to that construction. We think it was the intention of the general assembly to prohibit all sales by merchants and dealers, having creditors that may be defrauded, of their stock of goods and merchandise in bulk, otherwise than as provided by the statute, and to declare sales made without compliance with those provisions absolutely void. The statute would be wholly inoperative to effect the purposes for which it was intended if construed otherwise, and would be productive of much vexatious litigation.

We think our statute means the same as the Georgia act, although the word "conclusively" is not used in the clause declaring sales made without first complying with it shall be presumed fraudulent, and we concur in the reasoning of the Georgia court.

The sale which the complainant attempted to make to the defendants is conceded to have been in bulk, and there is no pretense that the statute at the time was complied with. The defendants were first informed of

Cantrell v. Ring.

the statute a day or two after the contract was made, and notified that the creditors of complainant would hold them, or the goods purchased by them, for the indebtedness of complainant. They then consulted their lawyer and arranged a meeting with complainant, when they demanded that the statute be complied with, informing him they would not further proceed with the purchase unless it was done. Complainant strenuously insisted that it was not necessary to do so, but finally consented that the defendants might make an inventory of the merchandise, and gave them what purported to be a list of his creditors and the indebtedness due them, amounting to about $800, but concealed from them the existence of a debt of $1,500, incurred by him in the purchase of the property he was selling, and which he, after this suit was brought, admitted was unpaid and a lien upon the property, and consented that the proceeds of the sale be applied towards its payment. The defendants immediately proceeded to take an inventory of the merchandise, and found that the value of it was but little in excess of $1,000, instead of from $3,000 to $3,500, as they testify the complainant represented to them to be its value. They proceeded no further in the matter, did not notify any of the creditors of the sale, but promptly informed complainant that they would not complete the purchase, and did not do so. The cash payment was never made, and defendants retained the soap factory.

There was, therefore, no compliance with the provisions of the statute. The complainant failed, upon request, to give the defendants a correct statement of his indebtedness, as it was his duty under the statute to do, and concealed the greater part of it, conceded, as above stated, to be a lien upon the property. The sale attempted to be made was therefore clearly within the prohibition of the statute.

This being so, complainant's bill cannot be maintained. It is well-settled law that an action will not lie to enforce a contract made in violation of a statute, or of the common law, or which is immoral in its character, or contrary to public policy. *Stevenson* v. *Ewing,* 87 Tenn., 46, 9 S. W., 230; *Haworth* v. *Montgomery,* 91 Tenn., 16, 18 S. W., 399; *Insurance Co.* v. *Kennedy.* 96 Tenn., 714, 36 S. W., 709; *Watterson* v. *Nashville,* 106 Tenn., 410, 61 S. W., 782; *Harton* v. *Lyons,* 97 Tenn., 193, 36 S. W., 851; *Parks* v. *McKamy,* 3 Head, 297, 298.

The result is that the decree of the chancellor must be reversed, and complainant's bill dismissed, with costs; and it will be so decreed.