ROY JOHNSON v. EDWIN W. STUART, et al.

Eastern Section. February 11, 1928.

J. W. Thompson, of Chattanooga, for plaintiff in error.
Sam H. Ford, of Chattanooga, for defendant in error.

(1)

2

OWEN, J. Roy E. Johnson, the plaintiff below, has appealed from a judgment rendered against him in favor of the defendants, E. W. Stuart and George R. Stuart. The plaintiff instituted his suit before a Justice of the Peace against the defendants alleging that the defendants had wrongfully withheld from the plaintiff $193.75 which was due plaintiff out of a real estate transaction. The defendants filed a counterclaim or set-off, alleging that the plaintiff was justly indebted to them in a sum in excess of $500 arising out of the same transaction and out of the same subject matter for which the plaintiff is now making his claim against defendants. There was a trial before a Justice of the Peace, an appeal from his judgment to the circuit court where the case was tried before the Circuit Judge without intervention of a jury, the Circuit Judge rendered a judgment in favor of the defendants' contention, there was a motion for a new trial which was overruled, an appeal perfected to this court. The defendants are engaged in the real estate business in Chattanooga, Tennessee. The plaintiff, during the years of 1922 and 1923 was a real estate salesman for said firm of Stuart & Stuart, the defendants. After the plaintiff left the office or employ of defendants he moved to Florida, he listed a certain piece of property with defendants to sell which they did sell for $1600, plaintiff agreed to pay defendants $100. When the defendants closed the trade for plaintiff and collected $1600, they retained $193.75 in addition to the $100 commission, which $193.75 representing commissions due the defendants on real estate consisting of three transactions which real estate deals had been made by the plaintiff while employed by the defendants. Defendants insisted that the plaintiff would buy a piece of property and take the title in his own name, which property purchased by the plaintiff had been listed with the defendants and defendants were entitled to certain commissions upon these various transactions. Plaintiff declined to accept the settlement on the basis proposed by the defendants, and advised them if necessary he would bring suit in an effort to recover the balance due him, they replied by stating that they had made an investigation and learned that the plaintiff was due them further sums, thereupon, they filed an itemized statement consisting of eight transactions beginning February 21, 1923 and ending October 17, 1923 in which it was alleged plaintiff was due the defendants $518.90. These transactions occurred February 21, 1923, April 12, 1923, May 4, 1923, May 28, 1923, August 27, 1923 and October 17, 1923. All were for commissions claimed except one item of $25 which the defendants alleged was cash received as earnest money in a certain transaction and which the plaintiff had not turned into the office, the $25 being the property of the defendants. There is a conflict in the testimony as to whether or not the plaintiff was to pay any commission to the defendants but we find evidence that he was to pay the defendants certain commissions. The plaintiff

has assigned eight errors in this court, they raise but two propositions, the first is, there is no evidence to support the judgment against the plaintiff in error and in favor of the defendants in error, the eighth assignment is that the trial court erred in holding that payment of the privilege tax and the procurement of a license by the defendants for the year of 1923 before the bringing of this suit gave the defendants the right to recover from the plaintiff. All the items of commission are alleged to have been earned during the taxable years of April 1, 1922 to April 1, 1923 and from April 1, 1923 to April 1, 1924, said payment having been made after the exercise of the privilege. The plaintiff insisted below that the defendants were not entitled to recover commissions from him because they had failed to pay their privilege taxes as real estate dealers. The defendants were engaged in real estate business in Chattanooga, Tennessee. It appears that the privilege tax for real estate dealers runs from April 1st to April 1st defendants paid no tax from April 1, 1922 to April 1, 1923. The taxes for the year beginning April 1, 1923 and ending April 1, 1924 was paid September 16, 1924. The warrant in the instant case was issued April 20, 1925. On September 16, 1924 the defendants also paid for a privilege tax for the year ending April 1, 1925. The trial judge was of the opinion that by reasons of the defendants paying their privilege tax September 16, 1924, they had the right to recover. The court being of the opinion that the defendants were relieved by chapter 83 of the Acts of 1923, counsel for the defendants concede that had the legislature not passed chapter 83 of the Acts of 1923. Stuart Brothers would have no right to the judgment given them in the court below. Chapter No. 83 of the Acts of 1923, passed March 31, 1923 and approved by the Governor on April 1, 1923, is as follows:

A bill to be entitled an act to amend the Revenue Act of 1919, being chapter 134 of the Acts of 1919, with respect to the penalty clause of section 18 thereof and so as to remove the invalidity resulting from the nonpayment of license tax as to all contracts heretofore made or performed, or that may hereafter be made or performed, upon condition that the person, firm or corporation liable for such tax shall, before suit is brought thereon, have paid the tax and the penalty thereon as prescribed by law; and to repeal section 16 thereof making it a misdemeanor to exercise a privilege without first paying the tax.

Section 1. Be it enacted by the general assembly of the State of Tennessee, that section 18 of chapter 134 of the Acts of 1919, being the Revenue Act, be amended so as to add at the end of the first paragraph of said section after the words "for each day's delinquency," provided, however, that the whole tax and penalty shall not exceed double the amount of the tax.

Sec. 2. Be it further enacted, that no contract heretofore made by persons, firms or corporations engaged in a business or occupation subject to a license or privilege tax shall be invalid or unenforceable in the courts because of the failure of such person, firm or corporation to have paid such license tax at the time such contract was made or was performed; provided, that such person firm or corporation shall, before suit is brought upon such contract, have paid the tax and the penalty thereon as prescribed by law.

Sec. 3. Be it further enacted, that section 16 of chapter — of the Acts of 1919, making it a misdemeanor to exercise a privilege without first paying the privilege tax is hereby repealed and that this repeal shall be applicable to all violations of said section occurring prior to the passage of this act.

Sec. 4. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

It will be noticed that the caption of said act is broader than the act, the caption provides, "to remove the invalidity resulting from the nonpayment of license tax on all contracts heretofore made or performed, or that may hereafter be made or performed, etc."

It will be noticed that section 2 provides only for contracts heretofore made.

It appears that said act originated in the senate, when this act passed its third reading on March 30, 1923, as shown by Senate Journal for 1923, page 1009, it was substituted for House Bill No. 624 on the same subject.

The House Journal sets forth the following actions upon the Senate Bill:

"Mr. Bejack moved to amend as follows:

"Amend by striking out the word "hereafter" in section 2, line 2, of said section.

"On motion the amendment was adopted.

"Thereupon Senate Bill No. 573, as amended, passed its third and final reading by the following vote," etc.

House Journal for 1923, p. 1140.

This Senate Bill so amended by the house was returned to the senate, the following notation appearing in the Senate Journal under date of March 31, 1923, to-wit:

"No. 573—To amend chapter 134, Acts 1919, substituted for House Bill on the same subject, amended, and passed by the house; to return to the senate, Senate Bill."

Under date of April 1, 1923, the following notation occurs under the heading "Senate Bill on House Amendment:"

"On motion of Mr. Hill (of White) the senate concurred in the House Amendment to Senate Bill No. 573."

It will be seen that two of the items claimed by defendants for commissions are dated prior to the passage of the act we now have

before us for consideration, the others occurred after the passage of said act.

The instant case was appealed directly to the Supreme Court that court properly held, in an opinion by Mr. Justice McKinney, that the Supreme Court was without jurisdiction and transferred case to this court, said opinion is reported in Volume 299 S. W., page 779, advanced sheet dated January 4, 1928.

It appears that on the same day the Governor approved chapter 83 of the Acts of 1923, amending the Revenue Act of 1919, the Governor also approved chapter 75 of the Acts of 1923 which is an act to provide revenue for the State of Tennessee, said act required that all real estate dealers and agents doing real estate business should pay a privilege tax and section 12 of chapter 75 provides as follows:

That it shall be unlawful for any persons, firm or corporation to exercise any of the foregoing privileges before complying with the provisions of this act; and anyone exercising any of the foregoing privileges without paying the tax prescribed shall be guilty of a misdemeanor, and liable to a fine of not less than $10 nor more than $50 per day for each day such privilege is exercised without license; provided, nothing herein shall be deemed to prohibit or interfere with interstate commerce.

Chapter 75, Acts of 1923 took effect from and after its passage, likewise, chapter 83 of the same year took effect from and after its passage, thus they both became effective on the same day.

We hold that Stuart Brothers would have to have a privilege license before they could recover their commissions from Johnson.

Under all our Tennessee decisions, real estate brokers are forbidden to pursue their avocation without license; and an unlicensed agent or broker, who, in violation of our revenue statute, the holdings of our Supreme Court passing upon the same, enters into a contract in pursuance of their avocation, cannot recover thereunder. The contract in such case is illegal and void. One of the early cases in which our Supreme Court passed upon this question is that of Stevenson v. Ewing (1888), 87 Tenn., 45. This case went up from Hamilton county. It appears from the opinion that the plaintiff was a real estate broker who had not paid the privilege tax as required by the revenue statute then in force, which declared that the occupation of a real estate broker "shall be deemed a privilege and be taxed, and not pursued or done without license." In passing upon the provisions of this act, the Supreme Court said, pages 47, 48:

"Here is an express prohibition of all unlicensed persons to act as real estate brokers, and, consequently, a prohibition, by necessary inference, of all contracts which such persons shall make for compensation to themselves for so acting. By the clear and unambiguous terms of the statute the real estate broker is forbidden to pursue his business 'without license;' and, it follows that, if he presumes to do

so, his acts are in violation of law, and all contracts for his benefit are illegal and void.''

This rule has been followed in every case where the subject has been up for decision, and has never been in any way departed from, so far as we can find. The case of Wender v. Lobertini, 151 Tenn., 476, seems to be the latest reported case in which our Supreme Court has passed approvingly upon this question. The court, page 479, used the following language, to-wit:

''As said by Mr. Justice Neil, in Wallace v. McPherson, 138 Tenn., at page 463, 197 S. W., 566, L. R. A., 1918A, 1148:

'' 'Any person sui juris may make any contract with another which is not in violation of the Federal or State constitutions, Federal or State statutes, some ordinance of a city or town, or some rule of the common law.'

''And so it is uniformly held that no recovery can be had by one who has acted in violation of a penal statute in transacting business out of which the cause of action arose.

''In Watterson v. Nashville, 106 Tenn., 410, 61 S. W., 782, reviewing Stevenson v. Ewing, 87 Tenn., 46, 9 S. W., 230, and Cary-Lombard Co. v. Thomas, 92 Tenn., 589, 22 S. W., 743, the violation of a statutory prohibition is clearly stated to be the basis of the rule denying recovery on contracts entered into without license.''

It is of course true that this judicial construction has become and is as much a part of our revenue statutes as the acts themselves. Douglass v. Pike, 101 U. S., 687.

In Wright v. Jackson Construction Co., 138 Tenn., 145, 153 the court said:

''It is not denied that complainant failed to pay the tax before he did the work. After the work was performed and before suit brought he paid the $25 tax. This was too late, even if he had paid the $100-tax applicable to his situation, he being a citizen of Alabama with his chief office there. It was too late because payment of a privilege tax and procurement of a license after the privilege has been exercised, though before suit brought, will not give the party so paying any right to maintain suit. Saule v. Ryan, 53 S. W., 977. The complainant having acted in violation of a statute in undertaking and transacting the business cannot recover. Stevenson v. Ewing, 3 Pick. (87 Tenn.), 46, 9 S. W., 330; Pile v. Carpenter, 118 Tenn., 288, 99 S. W., 360.''

We are therefore of the opinion that the legislature, by chapter 83 of the Acts of 1923, intended to validate contracts theretofore made by persons, firm or corporations engaged in a business or occupation subject to a license or privilege tax. Section 2 of said act provides:

''That no contract heretofore made by persons, firms or corporations engaged in a business or occupation subject to a license or privilege tax shall be invalid or unenforceable in the courts because

of the failure of such person, firm or corporation to have paid such license tax at the time such contract was made or was performed; provided, that such person, firm or corporation shall, before suit is brought upon such contract, have paid the tax and the penalty thereon as prescribed by law.''

It will be seen by the journals of the house and senate that the legislature never intended to protect a violation of the Revenue Act after the passage of said act, April 1, 1923, the word hereafter was stricken out and the act only applies to contracts heretofore made. All the commissions that Stuart Brothers are claiming, except the first two items during February, 1923, are based on contracts or commissions occurring after April 1, 1923, and chapter 83 of the Acts of 1923 does not relieve Stuart Brothers and permit them to recover for the six transactions dated April 12, May 4, May 28, August 27, October 17, 1923 and for a $19-item, for the reason that all of these transactions occurred after April 1, 1923 the date of the passage of said act, chapter 83, and Stuart Brothers at the time of said transactions had not paid their privilege tax as required by law.

We are of the opinion that Stuart Brothers are not entitled to these six items. As to the two transactions which occurred on February, 1923 and before the passage of chapter 83. We are of the opinion that Stuart Brothers cannot recover because they never procured a license from April 1, 1922 to April 1, 1923, had they procured the license from April 1, 1922 to April 1, 1923, we are of the opinion that chapter 83 of 1923 would have made the transactions occurring in February, 1923 valid, but not having procured any license prior to April 1, 1923, they are not entitled to these two charges which occurred during the month of February, 1923.

We are of the opinion that the judgment of the lower court is erroneous. The plaintiff's assignments are sustained, the judgment of the lower court is reversed, the plaintiff will recover of the defendants $193.75 with interest from April 20, 1925, the date that plaintiff instituted his suit, and the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.