BRAKEBILL & HAMILTON et al. v. SOUTH KNOXVILLE CONTRACTING & CONSTRUCTION COMPANY.

Eastern Section. November 6, 1931.

Petition for Certiorari denied by Supreme Court, March 9, 1932.

532

Green, Webb & Bass, of Knoxville, for plaintiff in error.

Wilburn & Metcalf and Kennerly & Key, all of Knoxville, for defendant in error.

PORTRUM, J. Prior to May, 1924, one W. M. Hall was the owner of two Mack trucks, each of two and one-half tons capacity, and one Liberty truck of four or five tons capacity, which he held under a title retaining contract. Hall entered into copartnership with Dr. G. A. Metcalf, a Veterinary Surgeon of Knoxville, for the purpose of carrying on a road construction business, and transferred the three trucks to the partnership. In May, 1924, the partners organized a corporation under the name of the South Knoxville Contracting & Construction Company, with a capital stock

of $4000, divided equally between the two partners, with Dr. Metcalf as its President, and W. M. Hall as Secretary-Treasurer and General Manager. The partnership transferred its assets, including the three trucks, to the corporation, in payment of the capital stock. In June, 1924, the corporation hired these three trucks to the Connelly Construction Company for use in highway work in McCreary County, Kentucky. The Connelly Construction Company was engaged in macadamizing one of the main State highways of the Commonwealth of Kentucky. The Mack trucks were rented with a chauffeur for $2.50 per hour, each, and the Liberty truck for $3.50 per hour, the owners of the three trucks to furnish the necessary gas and oil. The work was carried on ten hours daily, and the daily rental of the three trucks was the sum of $85. W. M. Hall, the General Manager, accompanied these trucks to Kentucky and was in charge of them while they were engaged upon the work there.

Prior to the transfer of these trucks by Hall to the partnership, he had become personally indebted to Brakebill & Hamilton, of Knoxville, in the sum of $655, and to the Eighty-Four Tire Company, of Knoxville, for the sum of $350, and he had never paid these bills. On August 2, 1924, Brakebill & Hamilton instituted in the Circuit Court of McCreary County, Kentucky, an attachment suit against W. M. Hall to collect its debt, and an attachment was issued and levied by the Sheriff of the County upon the three trucks as the property of W. M. Hall. Upon the solicitation of the contractors, who needed the trucks in their work, the Sheriff placed an agent in charge of the trucks and left them upon the work, where they remained until August 27th. On this date the Eighty-Four Tire Company ran an attachment upon the trucks, it having sued in the Circuit Court of McCreary County upon its debt, and the trucks, burdened by these attachments, were removed from the work by the Sheriff, as the property of said Hall, and stored in the open, awaiting the outcome of the litigation.

Dr. Metcalf, the President of the corporation, conferred with the plaintiffs in these attachment suits, through their attorneys, and advised them that the trucks belonged to this corporation, and further that he had a prior registered mortgage upon the trucks, securing an indebtedness to him from the corporation. He filed an intervening petition in the suits in the Circuit Court of Kentucky. The plaintiff at that time refused to release the attachment, but deferred the matter for investigation, and the trucks were permitted to remain in the open, exposed to the weather, and subject to rapid deterioration. On December 2, 1924, Brakebill & Hamilton dismissed their suit, and the attachment was discharged upon the three trucks, but the Eighty-Four Tire Company, who had only attached the two Mack trucks, permitted their suit to continue

until March 12, 1925, when it was dismissed and the attachments against the two Mack trucks were discharged. Then the South Knoxville Contracting & Construction Company sent to Kentucky and removed the three trucks to Knoxville,—why it had not removed the Liberty truck in December is not explained,—the trucks were then in such a condition, due to their deterioration by the exposure, as claimed, they were dismantled and sold for what they would bring.

In August, 1925, the South Knoxville Contracting & Construction Company, hereinafter called plaintiff, sued Brakebill & Hamilton for damages; and at the same time it instituted a second suit against the Eighty-Four Tire Company for damages, for the wrongful procurement and levy of the attachment against its property, and the resulting loss in the use of the trucks during their detention, and also for damages for the deterioration caused by the exposure of the trucks to the weather due to the improper preservation of the property while under the attachment. These suits were consolidated and heard together in February, 1928, when, at the conclusion of the evidence, the Circuit Judge directed a verdict in favor of the defendants, and dismissed the suits. An appeal in each case was prosecuted to the Court of Appeals, where the Circuit Judge was reversed and the cases remanded for a new trial.

Upon the remand the defendants applied to the court, and were allowed to file an additional special plea, the substance of which was that the plaintiff was exercising a privilege without first having procured a license, and it had no standing in court to enforce the claim growing out of its illegal conduct. The two cases went to trial before a jury, and at the conclusion of the evidence the defendants moved for a directed verdict. This motion was overruled, when the plaintiff moved the Court to strike certain pleadings in reference to the plaintiff's exercise of the privilege without a license. The court granted this motion and struck the pleadings. The case was submitted to the jury which rendered a verdict in favor of the plaintiff and against Brakebill & Hamilton, who attached all three of the trucks, for $1500; and a judgment in favor of the plaintiff and against the Eighty-Four Tire Company, which had attached only two of the trucks, subject to the previous levy of Brakebill & Hamilton, in the sum of $1000, making a total recovery, against both of the defendants, in the sum of $2500. Motions for new trials were made and overruled by each defendant, and an appeal was prosecuted to this court.

There are nine assignments of error which can be classified as follows:

(a) The assignment raising a deficiency of the evidence, or the overrulement of the motion for a directed verdict, and the court's

withdrawal of the defendants' pleading from the consideration of the jury.

(b) The assignments questioning the refusal of the trial judge to submit the defendants' special requests to. the jury. .

. (c) The assignments attacking the charge because of its ambiguity, and the failure of the circuit judge to charge fully upon the question of the measure of damages.

(d) And the assignments grounded upon the excessiveness of the verdicts.

The defendants made a special motion for a directed verdict at the conclusion of the proof, containing two grounds. The first ground being "Because the undisputed proof shows that the plaintiff had no license as a contractor and construction company of any: sort to do business of that sort." The second ground of the motion only states a proven fact which is not terminative of the defendants' liability. The assignment of error in this court based upon this motion which reads:

"The court erred in failing at the close of all the evidence to sustain defendants' motion for a directed verdict in their behalf."

No citation of the evidence relied upon followed this assignment, and no discussion of this assignment was made in the brief. The same legal question is raised in another assignment, which immediately follows this one, to-wit: "The Court erred in withdrawing from the jury defendants' second plea." The law applicable to this legal question is cited and discussed in the brief. The assignment that the court erred in failing to sustain the defendants' motion for a directed verdict should be overruled, because of the failure to comply with the Court's rule and cite, or discuss the evidence or lack of evidence to support the motion. The burden was upon the defendants to make out this particular defense, and the court should have been directed to the proof establishing the defense. It is necessary for the court to examine the entire record to find the facts to support this defense, or to discover their absence. In search of a fact that is not proven, it is necessary to examine the entire record. Under this defense certain facts are necessary to be established before the legal question can arise. It was necessary to show by proof that the plaintiff was exercising a privilege, at the time and place, without having procured a license. It is not disputed that the plaintiff was renting trucks on construction work in Kentucky, but has Kentucky a revenue law that makes it a privilege to do this character of work in Kentucky without first procuring a license? If such a statute exists it must be plead and proven in these cases before it is established that the plaintiff was exercising a privilege in violation of law. There is no presumption that the statutes of other states respecting penalties and forfeitures are similar to our own. Hubble v. Morristown Land

Co., 95 Tenn., 585, 32 S. W. 965; Buffalo Bank of Commerce v. Windmuller, 106 Ky., 395, 50 S. W., 548. Or the Revenue Act or Penal Statute. Stevenson v. Ewing, 87 Tenn., 46, 9 S. W., 230. The fact that plaintiff may have exercised a privilege in some county of Tennessee at some time without first procuring a license, is immaterial, but there is no proof that the plaintiff ever exercised a privilege in Tennessee without procuring a license. Therefore the circuit judge did not err in striking the pleadings because there was no evidence to support and make out the defense.

Counsel for the defendants in error calls to our attention that the special requests were not made a part of the record for the reason they were not included in the bill of exceptions. Plaintiff in error says they were copied in the motion for a new trial and this was made a part of the bill of exceptions, so the court can look to the motion for a new trial and determine that the special requests were presented to the judge. The motion for a new trial is in the nature of a pleading, and the facts alleged must appear from the record. This is a well settled rule of law. Nashville Street Railway v. O'Bryan, 104 Tenn., 28, 55 S. W., 300; Brewing Company v. Ralston, 8 Higgins, 592.

And now as to the meagerness of the judge's charge upon the measure of damages. The judge directed the jury to determine the actual damages suffered by the plaintiff, if any, by the unlawful levying, if they found the levy to be unlawful, and to assess the defendants with the damages incurred by it; it is not insisted that there is error in the charge so far as it went, but it is insisted that it was the duty of the judge to lay down the measure of damages applicable to the facts. It was the duty of counsel to aid the court in drafting his charge to the jury upon this complicated legal question of the correct measure of damages. Thus, in any event, it was the duty of counsel to call the court's attention to the fact that he had not laid down a rule to guide the jury in determining the damages. Counsel could not stand by and let the case go to the jury and then ask for a new trial.

"In the case of Southern v. Shelton, 12 Heis., 374, this court says, Judge Freeman delivering the opinion, 'It is said the court failed to instruct the jury as to the proper measure of damages. The charge of the court is defective on this subject, but as no instructions were requested in the court below, beyond such as were given, we cannot allow this objection to prevail when now made for the first time. This rule has been too long settled for discussion. It is based upon sound principle and this court will not reverse only for affirmative error of the court below.' " Knoxville v. Bell, 12 Lea, 157.

"This court will not reverse for mere paucity or meagerness of instructions to the jury, unless specific instructions and a fuller charge have been requested by the complaining party and refused by the court." The Progress Guaranty Association v. Ford, 104 Tenn., 533, 58 .S. W., 239.

Certain requests were in fact made, but not preserved in the record, and we cannot look to them without disregarding the above cited authorities. But we can say that we have seen them and none of them asked the judge to charge the specific rule of damages. One request asked the judge to charge the jury that it was the duty of the defendants to mitigate their damages by giving a bond to recover the possession of the trucks. Assuming ·it is one of the duties of the plaintiff to lessen its damages for the loss of the rent upon the trucks by replevying the trucks, by giving a replevy bond for repossession, it does not follow it could not recover for the tort of the defendants in exposing the trucks while in its possession, and thereby injuring them. We are not prepared to say that the request was an actual statement of the law for this reason, and for the further reason the first proposition is not a settled question in the State of Tennessee, and in the other states the authorities are divided. Therefore, we are not in position to state the result would have been different had the requests been made a part of the record.

The plaintiff was permitted to prove the rental value of the two Mack trucks for the time of their detention—ninety-five days— after deducting the upkeep and depreciation of the trucks in the sum of $25 per day, or the total amount of $2375. And the Liberty truck, after deducting for depreciation, for the ninety-five days detention, in the sum of $1662.50, making a total for the rental value of $4037.50. (But the Liberty truck was not detained ninety-five days, it was release from the levy on December 2, 1924.)

In addition to this item of damages the plaintiff was permitted to prove the value of the three trucks at the time of the levy; Dr. Metcalf fixed the value of the two Mack trucks at $1250 each and the Liberty truck at $2200, or a total of $4700. Thus is proven the value of the trucks when reclaimed, namely the the Mack trucks at the sum of $1250, and the Liberty truck which was dismantled and sold for junk, at .the sum of $75, or a total of $1325, and this leaves an item of damages for the deterioration in the sum of $4675. The defendants' witness, Mr. McCampbell, fixed the value of these trucks at the time of their detention, at the sum of $6000, so there could be little dispute upon this question. If the plaintiff was entitled to recover these two items as its measure of damages, then it is entitled from the proof to a recovery of $8762.50. The jury intuitively knew that these two overlapping items did not

represent the correct measure of damages, and so its verdict against both the defendants was for the sum of $2500. Had the amount of the verdict exceeded the actual value of the trucks at the time of the levy of the attachment, after deducting their salable value at the time they were released, then this court would set aside the excess of the verdict. We think in no event should the plaintiff recover more than the actual value of the trucks at the time they were attached. After the plaintiff regained the trucks it sold them, and the sale price should not be disregarded as representing the true value of the trucks in favor of opinions of witnesses. We do not think this court should disturb this verdict because it is shown to be excessive, for we do not think the proof shows the verdict to be an excessive verdict.

The judgment of the lower court is affirmed with costs.

Snodgrass and Thompson, JJ., concur.